## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ERIKA BROWN, KAMARIEA MAGETTE, and DIANA RUFUS, on behalf of themselves and others similarly situated, | Civil Action No. 17-cv-6897 |
| Plaintiffs, | |
| -against- | **AMENDED COMPLAINT** |
| AVALONBAY COMMUNITIES, INC. | **JURY TRIAL DEMANDED** |
| Defendant. | |

Plaintiffs, Erika Brown, KaMariea Magette, and Diana Rufus, on behalf of themselves and others similarly situated, by and through their attorneys, Hach Rose Schirripa & Cheverie, LLP, complaining of the Defendant AvalonBay Communities, Inc., respectfully allege as follows:

### NATURE OF THE ACTION

1.      Plaintiffs Erika Brown ("Ms. Brown"), KaMariea Magette ("Ms. Magette"), and Diana Rufus ("Ms. Rufus") (collectively, "Plaintiffs") bring class and collective allegations against Defendant AvalonBay Communities, Inc. ("Defendant," "AvalonBay," or the "Company") for its willful refusal to compensate them and other similarly situated persons, namely the current and former employees of Defendant ("the Class"), for overtime work performed in excess of forty (40) hours in a given workweek. This occurred for more than six years before the filing of this Amended Complaint.

2.      Plaintiffs further allege that Defendant violated wage statement and wage notice requirements during all relevant time periods on themselves and others similarly situated current and former employees of Defendant.

3.      Additionally, Plaintiffs allege that Defendant have been unjustly enriched by the financial benefit derived from the Company's willful refusal to compensate Plaintiffs and the Class

1

for overtime work performed in excess of forty (40) hours in a given workweek.

4.      Plaintiffs and the Class include but are not limited to all current and former hourly workers employed at Defendant's properties throughout the United States.

5.      Defendant has failed to pay overtime wages to Plaintiffs and the Class since at least on or about November 27, 2011, in violation of multiple federal and state labor laws.

6.      Defendant AvalonBay Communities, Inc. is a publicly traded real estate investment trust (REIT) incorporated in Maryland and headquartered in Arlington, Virginia. AvalonBay develops, owns, operates, manages, and maintains luxury apartment communities throughout the United States. As of January 31, 2017, AvalonBay held a direct or indirect ownership interest in 259 operating apartment communities containing 75,038 apartment homes in 10 states and the District of Columbia.

7.      Plaintiffs and members of the Class are current and former hourly employees who worked at Defendant's properties throughout the United States. Plaintiffs and the Class worked under various job titles, which included "Leasing Consultants" (also known as "Community Consultants" or "Senior Community Consultants"), "Concierges" (also known as "Community Concierges"), "Technicians" (which includes "Technician 1" "Technician 2" and "Technician 3" positions), and other maintenance and service-related positions.

8.      Plaintiffs Ms. Brown, Ms. Magette and Ms. Rufus are current and former Leasing Consultants assigned to work at multiple AvalonBay properties in New York. Their employment spans the period of 2011 to the present. As Leasing Consultants, Plaintiffs were responsible for showing and renting units to residents and prospective residents of AvalonBay properties.

9.      Defendant AvalonBay failed to pay its current and former employees, including Plaintiffs, overtime compensation for all hours worked in excess of forty (40) hours per work week.

AvalonBay accomplished this by improperly categorizing certain time worked by Plaintiffs and other Leasing Consultants and Concierges as "Non-Productive Hours."

10.     Specifically, Defendant required Plaintiffs and their co-workers to attend work-related meetings and events, which were labeled as Non-Productive time. As per Defendant's practice, an employees' Non-Productive Hours are not eligible for overtime compensation even when an employee works more than 40 hours in a work week.

11.     Defendant's policy and practice of assigning different pay rates for productive and nonproductive hours is a unilateral employment decision that is not reflected in any agreements between Defendant and their employees, including Plaintiff and the Class.  In the absence of any agreement setting a different rate for Non-Productive Hours, Plaintiff and the Class are owed compensation at their regular hourly rate set for "productive" work for all hours up to 40 and at a rate at least one and one-half times that rate for hours in excess of 40. *See* 29 CFR 778.318 - *Productive and nonproductive hours of work.*

12.     Defendant's unlawful Non-Productive Hour policy was first exposed on October 30, 2015, when former AvalonBay maintenance worker Timothy Tanski filed a Complaint in this District on behalf of himself and others similarly situated for Defendant's failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA") and the New York Labor Laws ("NYLL")  (hereinafter the "*Tanski* Action"). (*See Timothy Tanski v. AvalonBay Communities, Inc.,* 15-cv-06260 (LDW)(AKT) at Dkt. No. 1).

13.     On March 31, 2017, the Honorable A. Kathleen Tomlinson, U.S.M.J., granted, in part, Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice Pursuant to Section 216(b) of the FLSA (the "216(b) Decision"). (*See Tanski* Action at Dkt. No. 56). Specifically, the Court conditionally certified a collective of "non-exempt maintenance and service

employees who worked at Defendant's New York locations."

14.     According to Plaintiffs and other current and former AvalonBay workers, Defendant's Non-Productive Hour policy was not limited to maintenance and service workers employed at Defendant's New York properties.  To the contrary, this was a nation-wide practice applicable to all hourly employees, including Leasing Consultants, Concierges, maintenance Technicians and other service-related employees working at Defendant's New York properties, as well as all other AvalonBay properties throughout the United States.

15.     As such, Plaintiffs, along with all others similarly situated bring a collective class action for unpaid overtime compensation pursuant to the FLSA, 29 U.S.C. § 216(b), and the common laws and statutes of New York (NYLL §§ 190 *et seq.*), California (CA Labor Code §§ 500 *et seq.*), Connecticut (CT Gen. Stat. §§ 31-76b *et seq.*), Florida, Maryland (MD Lab & Emp Code §§ 3-425, *et seq.*), Massachusetts (MA Gen L ch 151 §§ 1A *et seq.*), New Jersey (NJ Rev Stat §§ 34:11-56A *et seq.*), Pennsylvania (43 PS Labor §§ 333.104 *et seq.*), Rhode Island (RI Gen L §§ 28-12 *et seq.*), Texas (Texas Labor Code ch §§ 61, *et seq.*), Virginia, Washington (RCW 49.46, *et seq.*), and the District of Columbia (DC Stat. §§ 32-1001, *et seq*).

16.     Plaintiffs, along with all others similarly situated bring a class action for unpaid overtime compensation for Defendant's violation of the unjust enrichment the law of the District of Columbia and the laws in the states of California, Connecticut, Florida, Maryland, Massachusetts, New Jersey, New York, Pennsylvania, Rhode Island, Texas, Virginia, and Washington.

17.     The Class seeks appropriate monetary and other relief to redress the wrongdoing complained of herein.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

19.     This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

20.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

21.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391, because Defendant is located in this District and a substantial part of the events and omissions giving rise to the claims occurred in this District.

## THE PARTIES

**Plaintiff Erika Brown:**

22.     Ms. Brown is an adult individual who is a resident of the town of Patchogue, Suffolk County, State of New York.

23.     Ms. Brown was employed as a Leasing Consultant at seven of Defendant's New York properties: (1) "Avalon Commons" located at 313 Avalon Cir., Smithtown, NY 11787; (2) "Avalon Court" located at 100 Court N. Dr., Melville, NY 11747; (3) "Avalon Rockville Centre" located at 80 N. Centre Ave., Rockville Centre, NY 11570; (4) "Avalon Garden City" located at 998 Stewart Ave., Garden City, NY 11530; (5) "Avalon Towers" located at 10 W. Broadway, Long Beach, NY 11561; (6) "Avalon Fort Greene" located at 343 Gold St., Brooklyn, NY 11201; and (7) "Avalon Riverview" located at 4-75 48th Ave., Long Island City, NY 11109.

24.     Ms. Brown was employed by Defendant for approximately twenty-five months from May 28, 2012 to June 30, 2014.

25.     Ms. Brown's primary work duties consisted of leasing units to tenants and prospective tenants of her assigned AvalonBay property. She was also responsible for staging apartments in furtherance of a showing and assisting tenants with moving in and out of their homes.

26.     Ms. Brown worked with approximately 1-5 other Leasing Consultants at each of her assigned properties, including: (1) April Converse ("Ms. Converse"), who was employed with Defendant from 2008 to 2013 and worked with Ms. Brown at Avalon Commons in Smithtown, NY; and (2) Danielle Martin ("Ms. Martin"), who was employed with Defendant from September 2009 to June 2014 and worked with Ms. Brown at Avalon Fort Greene in Brooklyn, NY and Avalon Riverview in Long Island City, NY.

27.     Ms. Brown, Ms. Converse, and Ms. Martin and all of their Leasing Consultant co-workers were not paid overtime wages for time labeled as Non-Productive Hours.

28.     As a former Leasing Consultant for AvalonBay, Ms. Brown is a covered employee as defined by NYLL § 190.

**Plaintiff Diana Rufus**

29.     Ms. Rufus is an adult individual who is a resident of the town of Garden City, Nassau County, State of New York.

30.     Ms. Rufus has worked at various AvalonBay properties as both a Concierge and a Leasing Consultant.

31.     Ms. Rufus began her employment with Defendant in 2011 as a Concierge at AvalonBay Forte Green.

32.     As a Concierge, Ms. Rufus' primary responsibility was customer service and assisting the building's residents. Ms. Rufus was stationed at the front desk lobby where she would greet residents, check-in visitors, and organize and distribute packages to the residents.

33.     Ms. Rufus worked with 3-5 other Concierges at Avalon Fort Greene, including Ms. Gladys Galarza.  Ms. Rufus and all of her Concierge co-workers were not paid overtime wages for time labeled as Non-Productive Hours.

34.     On February 13, 2013, Ms. Rufus transitioned from a Concierge to a Leasing Consultant position at Avalon Fort Greene, a position she held from 2013 to February 2017. Currently, Ms. Rufus works as a Leasing Consultant at "Avalon Brooklyn Bay" located at 1524 Sheepshead Bay Rd., Brooklyn, NY 11235.

35.     As a Leasing Consultant, Ms. Rufus is responsible for leasing units to tenants and prospective tenants of her assigned AvalonBay property. She was also responsible for staging apartments in furtherance of a showing and coordinating with tenants who were moving in and out of their homes.

36.     Ms. Rufus worked with approximately 3-5 other Leasing Consultants at Avalon Fort Greene, including Ms. Brown Ms. Magette and current Leasing Consultants Jeanelle Mothersill ("Ms. Mothersill"), David Greene ("Mr. Greene"), Denise Torres ("Ms. Torres"), Richard Castillo ("Mr. Castillo"), and Nazila Ali ("Ms. Ali") and Shafira C.  Ms. Rufus currently works with 2 other Leasing Consultants at Avalon Brooklyn Bay.

37.     Ms. Rufus and all of her Leasing Consultant co-workers, including Ms. Brown, Ms. Magette, Ms. Mothersill, Ms. Martin and Ms. Ali were not paid overtime wages for time labeled as Non-Productive Hours.

38.     As a current Leasing Consultant for AvalonBay, Ms. Rufus is a covered employee as defined by the FLSA, 29 U.S.C. § 203(e) and NYLL § 190, and is not exempt by the FLSA, 29 U.S.C. § 213.

**Plaintiff KaMariea Magette**

39.     Ms. Magette is an adult individual who is a resident of Hamilton County, State of Ohio.

40.     Ms. Magette was employed by Defendant as a Leasing Consultant at Avalon Fort Greene for approximately two years and eight months from July 2012 to March 2015.

41.     Ms. Magette's primary work duties consisted of leasing units to tenants and prospective tenants of her assigned AvalonBay property. She was also responsible for staging apartments in furtherance of a showing and assisting tenants with moving in and out of their homes.

42.     Ms. Magette worked with approximately 3-5 other Leasing Consultants while working at Avalon Fort Greene, including Plaintiff Diana Rufus and Ms. Mothersill, who has worked as a Leasing Consultant for approximately eight years in several of Defendant's New York, New Jersey and Connecticut properties.

43.     Ms. Magette, Ms. Rufus, Ms. Mothersill, and Ms. Martin and all of their Leasing Consultant co-workers were not paid overtime wages for time labeled as Non-Productive Hours.

44.     As a former Leasing Consultant for AvalonBay, Ms. Magette is a covered employee as defined by the FLSA, 29 U.S.C. § 203(e) and NYLL § 190, and is not exempt by the FLSA, 29 U.S.C. § 213.

**Defendant AvalonBay Communities, Inc.:**

45.     AvalonBay is a Maryland corporation duly organized under the laws of the state of New York with its principal place of business at Ballston Tower, Suite 800, 671 N Glebe Road, Arlington, Virginia, 22203.

46.     AvalonBay is a real-estate management company involved in the development, redevelopment, acquisition, ownership and operation of multifamily residential communities throughout the United States, including California, Connecticut, District of Columbia, Florida,

Maryland, Massachusetts, New Jersey, New York, Pennsylvania, Rhode Island, Texas, Virginia, and Washington.

47.     The number of apartment communities which AvalonBay has a direct or indirect interest in fluctuates as properties are developed, acquired or sold.

48.     According to the Form 10-K for fiscal year 2014, as of January 31, 2015, AvalonBay held a direct or indirect ownership interest in 252 operating apartment communities throughout the United States, with approximately 3,006 employees nationwide. As of January 31, 2016, AvalonBay held a direct or indirect ownership interest in 257 operating apartment communities in 10 states and the District of Columbia, with approximately 2,981 employees nationwide.

49.     According to the Form 10-K for fiscal year 2016, as of January 31, 2017, AvalonBay held a direct or indirect ownership interest in 259 operating apartment communities containing 75,038 apartment homes in 10 states and the District of Columbia.

50.     AvalonBay has issued securities that are publicly traded on the New York Stock Exchange under the ticker symbol "AVB." For the year ended December 31, 2013, AvalonBay reported $1.4 billion in revenue and $352 million in net income.

51.     For the years 2012 to 2016, AvalonBay had as many as 35 operating apartment communities in the State of New York. As of January 31, 2017, AvalonBay operated 29 apartment communities in New York, including the eight properties where Plaintiffs were employed as Leasing Consultants and Concierges.

52.     For the years 2012 to 2016, AvalonBay had as many as 18 operating apartment communities in the State of Connecticut. As of January 31, 2017, AvalonBay operated 13 apartment communities in Connecticut.

53.     For the years 2012 to 2016, AvalonBay had as many as 25 operating apartment communities in the State of New Jersey. As of January 31, 2017, AvalonBay operated 20 apartment communities in New Jersey.

54.     As of January 31, 2017, AvalonBay operated apartment communities in several other States, including: 37 communities containing 9,639 apartment homes in the State of Massachusetts; 39 communities containing 14,374 apartment homes in Maryland, Virginia and the District of Columbia; 17 communities containing 4,092 apartment homes in the State of Washington; and 101 communities containing 29,171 apartment homes in the State of California.

55.     AvalonBay employs a team of Leasing Consultants at each of its properties throughout the country. The number of Leasing Consultants generally depends on the size of the apartment community they are assigned to.

56.     AvalonBay employs Concierges at certain properties throughout the country. Generally, properties located in more urban environments, such at Avalon Fort Greene, will have Concierges working on their staff.

57.     AvalonBay employs a team of maintenance and service workers to operate each of its properties throughout the country. The number of maintenance staff workers generally depends on the size of the apartment complex they are assigned to.

58.     As all times relevant to this Complaint, AvalonBay had control over all employment practices at their properties. This operation and oversight included control over compensation of workers, scheduling, working conditions, and recruiting and training of workers.

59.     Upon information and belief, at all relevant times, Defendant's annual gross volume of sales made or business done was not less than $500,000.

60.     As detailed below, Defendant AvalonBay is a covered employer within the meaning of the FLSA and the NYLL and, at all relevant times, employed Plaintiffs and other similarly situated workers.

### SUBSTANTIVE ALLEGATIONS

61.     Plaintiffs and the Class have been victims of a common policy and plan perpetrated by Defendant that has violated their rights under the FLSA and the NYLL by denying them proper overtime compensation.

62.     As part of their regular business practice, Defendant has intentionally, willfully, and repeatedly harmed Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA and the NYLL as described in this complaint.

**Plaintiff Erika Brown's Position as a Leasing Consultant**

63.     Ms. Brown began her employment with AvalonBay on May 28, 2012. The terms and conditions of her Leasing Consultant position were detailed in a packet of "on-boarding materials" provided by the Company.

64.     Ms. Brown worked as a Leasing Consultant at seven of Defendant's New York properties. As a Leasing Consultant for AvalonBay, Ms. Brown was responsible for all phases of apartment rentals at her assigned property. Ms. Brown would correspond with prospective residents by telephone and email to set up apartment showings. When showing an apartment, Ms. Brown would stage the unit in anticipation of her scheduled appointments. She would also assist tenants with moving in and out of their homes, as well as tenants who were switching to different units in the property.

65.     Ms. Brown worked with approximately 3-5 other Leasing Consultants at each of her assigned New York properties.

66.     Depending on her assigned property, Ms. Brown's work schedule was either 8:30 am to 5:30 pm or 9:00 am to 6:00 pm, five days per week, with a one hour unpaid lunch break each day.  Ms. Brown's rate of pay was $22.00 per hour.

67.     Ms. Brown recorded her time by using the Defendant's finger print system to "clock-in" when she arrived at the premises and "clock-out" when she left for the day.  She also clocked-in and out when she took her one hour lunch break each day.

**Plaintiff Diana Rufus' Positions as a Concierge and Leasing Consultant:**

68.     Ms. Rufus began working for AvalonBay in 2011 as a Concierge at Defendant's Avalon Fort Greene property. She was hired for the position following an interview with Building Manager Noah Hager and another supervisor named "Ginger."

69.     As a Concierge, Ms. Rufus' was stationed at the front desk where she was responsible for assisting the residents and visitors at Avalon Fort Greene. Ms. Rufus' primary role was customer service, which included greeting residents, checking-in visitors, and handling the residents' packages.

70.     Ms. Rufus worked with 4-5 other Concierges at Avalon Fort Greene. Her schedule as a Concierge was 7:00 am to 3:00 pm, Sunday through Thursday, with a one-hour lunch break each day.  Ms. Rufus' rate of pay as a Concierge was $20.22 per hour.

71.     Ms. Rufus and her Concierge co-workers were subjected to Defendant's Non-Productive Hours policy.  Ms. Rufus was never provided any materials or otherwise made aware of Defendant's policy concerning Non-Productive Hours prior to being hired as a Concierge.

72.     On February 13, 2013, Ms. Rufus applied for a Leasing Consultant position at Avalon Fort Greene. Following an interview with Shawn Whitmore, she was hired for the position, which she held through February 2017. In June of 2016, Ms. Rufus was promoted to a "Senior"

Leasing Consultant position. Ms. Rufus maintained the same duties and responsibilities as before the promotion and continued to be paid on an hourly basis. Currently, Ms. Rufus works as a Senior Leasing Consultant at "Avalon Brooklyn Bay" located at 1524 Sheepshead Bay Rd., Brooklyn, NY 11235.

73.     As a Leasing Consultant for AvalonBay, Ms. Rufus is responsible for all phases of apartment rentals at her assigned property. Ms. Brown would correspond with prospective residents by telephone and email to set up apartment showings. When showing an apartment, Ms. Brown would stage the unit in anticipation of her scheduled appointments. She would also assist tenants with moving in and out of their homes, as well as tenants who were switching to different units in the property.

74.     Ms. Rufus worked with approximately 3-5 other Leasing Consultants at Avalon Fort Greene. She currently works with two other Leasing Consultants at Avalon Brooklyn Bay.

75.     While working as a Leasing Consultant at Avalon Fort Greene, Ms. Rufus' work schedule was 9:00 am to 6:00 pm, five days per week, with a one hour lunch break each day.  Ms. Rufus' rate of pay as an Avalon Fort Greene Leasing Consultant was approximately $22.96 per hour. Her current schedule at Avalon Brooklyn Bay is 9:00 am to 6:00 pm, Tuesday through Saturday, with a one-hour lunch break each day. Ms. Rufus' current rate of pay is $23.63 per hour.

76.     Ms. Rufus and her Leasing Consultant co-workers at both Avalon Fort Greene and Avalon Brooklyn Bay, including but not limited to Ms. Brown, Ms. Magette, Ms. Martin, Ms. Mothersill, and Ms. Shafira C., were subjected to Defendant's Non-Productive Hours policy.

77.     Ms. Rufus was never provided any materials or otherwise made aware of Defendant's policy concerning Non-Productive Hours prior to the transition to each Leasing Consultant position.

78.     Throughout her career with Defendant, Ms. Rufus recorded her time by using the Defendant's finger print system to "clock-in" when she arrived at the premises and "clock-out" when she left for the day.  She also clocked-in and out when she took his one hour unpaid lunch break each day.

**Plaintiff KaMariea Magette's Position as a Leasing Consultant:**

79.     Ms. Magette was employed by Defendant as a Leasing Consultant at Avalon Fort Greene for approximately two years and eight months from July 11, 2012 to March 2015.

80.     Ms. Magette is originally from the mid-west and applied for a position with AvalonBay in June of 2012. After flying to New York to interview with Shawn Whitmore, she was offered a Leasing Consultant position and moved to New York to begin work at Avalon Fort Greene.

81.     As a Leasing Consultant for AvalonBay, Ms. Magette was responsible for all phases of apartment rentals at her assigned property. Ms. Magette would correspond with prospective residents by telephone and email to set up apartment showings. When showing an apartment, Ms. Magette would stage the unit in anticipation of her scheduled appointments. She would also assist tenants with moving in and out of their homes, as well as tenants who were switching to different units in the property.

82.     Ms. Magette worked with approximately 3-5 other Leasing Consultants at Avalon Fort Greene. Ms. Magette's work schedule was 9:00 am to 6:00 pm, five days per week, with a one hour unpaid lunch break each day.  Ms. Magette's rate of pay was approximately $22.00 per hour.

83.     Ms. Rufus and her Leasing Consultant co-workers at Avalon Fort Greene, including but not limited to Ms. Brown, Ms. Rufus, Ms. Martin, Ms. Mothersill, and Ms. Shafira C., were

subjected to Defendant's Non-Productive Hours policy. Ms. Magette was never provided any materials or otherwise made aware of Defendant's policy concerning Non-Productive Hours prior to being hired as a Leasing Consultant.

84. Ms. Magette recorded her time by using the Defendant's finger print system to "clock-in" when she arrived at the premises and "clock-out" when she left for the day. She also clocked-in and out when she took her one hour lunch break each day.

**Defendant's Unlawful Overtime Practices**

85. Plaintiffs and their Leasing Consultant and Concierge co-workers were regularly required to attend staff meetings, training sessions, employee lunches, and other work-related events. These meetings were usually conducted during normal business hours of 8:00 am to 5:00 pm, Monday through Friday, and could last for several hours depending on the nature of the event. Plaintiffs and the other employees in attendance would often have to report back to their work locations after the meeting concluded to continue working until 5:00 pm.

86. In addition to Plaintiffs and their Leasing Consultant and Concierge co-workers, there were often employees working in other positions and/or from other AvalonBay properties in attendance at these meetings.

87. These events ranged from property-specific events such as holiday parties and resident functions, to regional events, such as quarterly meetings that were attended by hundreds of workers from properties in many different states.

88. For certain Avalon Fort Greene meetings, such as certain holiday events and resident functions, Plaintiffs were required to participate along with all other hourly employees, including Leasing Consultants, Concierges, maintenance Technicians, and other service workers.

89.     Plaintiffs often had discussions with their Leasing Consultant and Concierge co-workers, including Ms. Mothersill, Ms. Ali, Mr. Castillo, Mr. Gutie, Mr. Whiteman, Mr. Vargas, Keith and Sierra, regarding the Company's Non-Productive Hours policy. Plaintiffs and their coworkers would often complain about how they were being shorted overtime compensation because of this "Non-Productive" classification.

90.     Ms. Brown discussed Defendant's Non-Productive policy with her Leasing Consultant co-workers at each of the eight New York properties where she was assigned.

91.     In addition to property-specific meetings, Plaintiffs were also required to attend mandatory quarterly meetings every three months. These meetings were often held on Long Island, NY and attended by Leasing Consultants, Concierges, and maintenance Technicians working at AvalonBay properties throughout New York, New Jersey and Connecticut.

92.     While these meetings were work-related, conducted during business hours, and often mandatory, Defendant improperly labeled the time spent during these meetings as "Non-Productive" hours.

93.     Any "Non-Productive" work exceeding forty hours per week was compensated at Plaintiffs' regular rate of pay, not at their overtime rate of one and one half times their normal pay rate as required by the FLSA and NYLL. In other words, if Plaintiffs worked forty-five hours in a given work week, and five of those hours were labeled by Defendant as "Non-Productive" hours, Plaintiffs would receive their regular pay for all forty-five hours. Defendant did not calculate those extra five hours worked by Plaintiffs at the required overtime rate of one and one half times their normal pay.

94.     Defendant actively schemed to prevent their employees from earning overtime, which was accomplished through Defendant's Non-Productive Hours policy. Specifically,

Plaintiffs and their co-workers noticed how the Company would schedule these "Non-Productive" meetings/events more frequently during weeks where it looked like the employees' hours were going to exceed forty hours. Therefore, if an employees' hours did in fact exceed forty hours, the Company would have those Non-Productive Hours reserved to off-set any accumulated overtime hours.

95.     Plaintiffs were never made aware of Defendant's policy concerning Non-Productive hours prior to being hired by AvalonBay.

96.     Plaintiffs' paycheck, which were generated through various AvalonBay Communities, Inc., offices in Alexandria, Virginia, specifically listed separate "Earnings" categories for "Non-Productive Hours" and "Overtime."  Any time labeled as "Non-Productive Hours" was assigned a regular rate of pay whether or not Plaintiffs' total hours worked for that week exceeded forty hours.

97.     Below is an example of how Defendant categorized Plaintiff Diana Rufus' paycheck for certain pay periods:

**Paystub for 12/20/2015 – 12/26/2015**

| Earnings: | Hourly Rate: | Hours: |
|---|---|---|
| Regular | $24.35 | 21.75 |
| Vacation/Holiday | $24.35 | 16.00 |
| Non-Productive Hours | $24.35 | 4.00 |
| Overtime | $36.53 | 0.75 |
| **Total** | | **42.50** |

**Paystub for 11/20/2016 – 11/26/2016**

| Earnings: | Hourly Rate: | Hours: |
|---|---|---|
| Regular | $24.35 | 21.50 |
| Vacation/Holiday | $24.35 | 16.00 |
| Non-Productive Hours | $24.35 | 3.50 |
| | | |
| **Total** | | **41.00** |

98.     The Company determined what type of work would be considered Non-productive Hours. Plaintiffs have had discussions with their superiors regarding the Company's failure to pay Plaintiffs and their co-workers overtime for Non-Productive Hours.  As such, AvalonBay is aware that the Plaintiff and members of the putative class regularly work uncompensated overtime, which the Company improperly labels as Non-Productive Hours.

**Defendant admits that their Non-Productive Hours Policy was Improper**

99.     Defendant's misconduct in its "Non-Productive" classification was first exposed on October 30, 2015 by way of the *Tanski* Action. Since that time, the Company has acknowledged its wrongdoing and is actively taking steps to buy-off certain New York employees with cash settlements. Defendant's efforts to pay-off potential plaintiffs are not only insufficient to redress their federal and state labor law violations, but fail to consider the thousands of other employees who have been harmed by this practice: (1) current and former Leasing Consultants working at AvalonBay's New York properties; and (2) current and former Leasing Consultants, Concierges, maintenance Technicians, and other hourly workers employed at all AvalonBay properties throughout the United States.

18

100.    In or around September 2017, Avalon Fort Greene's Maintenance Supervisor, Marcus Spears ("Mr. Spears"), held a maintenance staff meeting in the building's maintenance shop. Present at the meeting was Technician 1 Gabriel Garcia ("Mr. Garcia") and the rest of the of his maintenance Technician co-workers, including Patricia Barahona (Mr. Barahona"), Angel Torres ("Mr. Torres"), George Arroyo ("Mr. Arroyo"), and Carl Baloma ("Mr. Baloma").[1] During the meeting, Mr. Spears announced to his maintenance staff that the Company had made a mistake and would be changing the time spent at the mandatory quarterly events to regular pay – i.e. "Productive" time.

101.    Within weeks of Mr. Spears' announcement regarding the re-classification of Non-Productive Time, current AvalonBay Concierge, Ms. Gladys Galarza, Mr. Garcia, and their Concierge and maintenance co-workers and supervisors at Fort Greene attended a similar meeting regarding their compensation. This subsequent meeting was conducted in the building's lounge by AvalonBay's Director of National Labor Board Relations and Human Resources, Steven Batchelor ("Mr. Batchelor"). Like Mr. Spears, Mr. Batchelor stated that the Company had made certain errors in its past pay practices and would be going back six years to compensate the workers for what the Company owes them.

102.    On November 10, 2017, Plaintiff Diana Rufus' paystub for the period of 10/20/2017 – 11/04/2017 reflecting the following entries: (1) "Settlement" for $1,676.48; and (2) "NonProdHrs" for $424.13.

103.    Upon information and belief, the additional sums of money in Ms. Rufus' paycheck are Defendant's attempt to pay-off Ms. Rufus for her time working as a Concierge. Not only does this payment ignore Plaintiff's damages for Defendant's statutory violations, it also fails to

---

[1] These five individuals, along with 37 other New York maintenance and service workers, are currently opt-in Plaintiffs in the *Tanski* Action.

consider Ms. Rufus' unpaid wages for her time as a Leasing Consultant.

104.    It is evident from the admissions made by Mr. Spears and Mr. Batchelor, that Defendant is recognizing, in part, the illegality of its Non-Productive policy. Defendant's pay-off falls short, however, given the number of employees affected by this policy. The quarterly meetings alone, which were attended by Plaintiffs, Leasing Consultants, and hourly employees from various states, demonstrate how the harm caused by the Non-Productive Hours policy is significantly broader than maintenance and service employees working at the Company's New York properties.

**Defendant Has Been Unjustly Enriched by its Illegal Non-Productive Hour Policy**:

105.    AvalonBay has derived a substantial financial benefit through its illegal Non-Productive hour policy.

106.    Defendant knowingly and purposefully avoided its legal obligation to pay Plaintiffs and members of the putative class overtime compensation for all hours worked in excess of forty (40) hours per work-week.

107.    Plaintiffs and the members of the putative class conferred a benefit on Defendant by working in excess of forty (40) hours per work-week, but receiving less compensation that what AvalonBay was legally required to pay them.

108.    Defendant derived a significant benefit from Plaintiffs and the members of the putative class in failing to pay their employees the required one and a half (1 ½) times their respective regular rates of pay for overtime worked for all hours worked including "Non-Productive Hours."

109.    At all relevant times, AvalonBay has been aware of the financial benefits derived by using its Non-Productive policy to avoid compensating Plaintiffs and members of the putative

class overtime for all hours worked. In fact, Defendant has admitted the illegality of its Non-Productive policy.

110.    Permitting AvalonBay to retain the financial benefits received from its Non-Productive Policy and the failure to pay proper overtime compensation to Plaintiffs and members of the putative class would be inequitable and unjust.

**Defendant's Non-Productive Policy Applies to Concierges:**

111.    Gladys Galarza ("Ms. Galarza") is currently employed with Defendant as a Concierge at Avalon Fort Greene.

112.    Ms. Galarza began her employment with Defendant in 2009 as a maintenance "Technician 1" at "Avalon at Glen Cove" located at 1100 Avalon Square, Glen Cove, NY 11542. Ms. Galarza is a current NYLL class member in the *Tanski* action.

113.    Ms. Galarza worked as a Technician 1 from October 2009 to July 2012 and was responsible for regularly cleaning and maintaining her apartment complex facilities and residents' apartments.

114.    Ms. Galarza worked with 3-5 other maintenance technicians at Avalon at Glen Cove. Ms. Galarza and all of her maintenance and service co-workers were not paid overtime wages for time labeled as Non-Productive Hours.

115.    In August 2012, Ms. Galarza transferred from her Technician 1 position at Avalon at Glen Cove to her current Concierge position at Avalon Fort Greene.

116.    As a Concierge, Ms. Galarza's primary duty is customer service and assisting the residents of Avalon Fort Greene. Ms. Galarza is stationed at the front desk lobby where she greets residents, checks-in visitors, and organizes and distributes packages to the residents.

117.    Ms. Galarza has worked with numerous Concierges during her time at Avalon Fort

Greene, including Plaintiff Diana Rufus, Erdan Gutie ("Mr. Gutie"), Travis Whiteman ("Mr. Whiteman"), Gustavo Vargas ("Mr. Vargas"), Keith and Sierra.

118.    Ms. Galarza and all of her Concierge co-workers, including Ms. Rufus, Mr. Gutie, Mr. Whiteman, Mr. Vargas, Keith and Sierra, were not paid overtime wages for time labeled as Non-Productive Hours.

119.    Ms. Galarza works with 3-5 other Concierges at Avalon Fort Greene.  Her work schedule is 8:30 am to 5:30 pm, five days per week, with a one hour unpaid lunch break each day. Ms. Galarza's rate of pay is $24.60 per hour.

120.    Ms. Galarza and her Concierge co-workers at Avalon Fort Greene, including but not limited Ms. Rufus, Mr. Gutie, Mr. Whiteman, Mr. Vargas, Keith and Sierra, were subjected to Defendant's Non-Productive Hours policy.  Ms. Galarza was also subjected to the Non-Productive Hours practice when she worked as a Technician 1 at Avalon Glen Cove. Ms. Galarza was never provided any materials or otherwise made aware of Defendant's policy concerning Non-Productive Hours prior to being hired as a Technician or the transfer to her current Avalon Fort Greene Concierge position.

121.    Ms. Galarza recorded her time by using the Defendant's finger print system to "clock-in" when she arrived at the premises and "clock-out" when she left for the day.  She also clocked-in and out when she took her one hour unpaid lunch break each day.

**Defendant's Non-Productive Policy Applies to Hourly Workers at *all* AvalonBay Properties:**

122.    Defendant's Non-Productive Hours policy is a company-wide practice applicable to workers at all of its properties throughout the United States, including Leasing Consultants, Concierges, maintenance Technicians, and other hourly service workers.

123.     In connection with the *Tanski* Action, Mr. Batchelor submitted a sworn affidavit referencing Defendant's Non-Productive Hours policy maintained by AvalonBay's Human Resources Office:

**Non-Productive Hours (NPH)**

Using Non-Productive Hours in Kronos:

There are only a few instances when NPH hours should be recorded in Kronos for hourly associates. These include:

- Supplemental hours to be paid for early closures due to holidays or extreme weather conditions
- Remainder of day off after a meeting, a non-work related corporate event, or awards that indicate half day or full day
- Meal Break Penalty (CA only)

Please note, NPH hours cannot be submitted through the Kronos clock. A paper Timecard Adjustment form must be filled out and submitted to your manager. Additionally, NPH should not be used for training or quarterly awards, this should be reflected as regular hours. If you have any questions about if NPH should be used in a scenario, please feel free to reach out to your HR Manager. If you need additional details about NPH in Kronos, please feel free to check out the Kronos Knowledge Database.

124.     AvalonBay's Human Resources Office makes no indication that the Company's Non-Productive Hours policy applies differently from inside and outside of New York, from state to state, or from one employee to another.[2] Nor does Mr. Batchelor make any reference in his affidavit that the Company's Non-Productive Hours policy only affects those hourly employees in New York.

125.     To the contrary, the experiences of many current and former AvalonBay employees (or "hourly associates" as referenced in the NPH policy) demonstrate the universal application of Defendant's Non-Productive Hours policy:

---

[2] With the exception of the "Meal Break Penalty (CA only)" reference. Indeed, the fact that this policy contains a limited exception for one state only indicates that this policy was considered to be applicable Company-wide when drafted.

*Steven Donohue – Massachusetts Technician*

126.    Steven Donohue ("Mr. Donohue") was employed with AvalonBay as a maintenance Technician II from April 2015 through February 2016.  Mr. Donohue began his employment at "Avalon at Lexington Hills" located at 1000 Main Campus Drive, Lexington, MA 02421.

127.    Mr. Donohue worked with 3-5 other maintenance workers at Lexington Hills, including two gentlemen named Joe and Brian who also held Technician II positions. Brian and Joe had previously worked as a Technicians at "Avalon Bear Hill" located at 1449 Main St, Waltham, MA 02451.

128.    Mr. Donohue, along with his maintenance co-workers, were paid hourly and subjected to Defendant's Non-Productive Hours policy.

129.    Mr. Donohue had discussions with Joe and Brian regarding Defendant's overtime practices at Lexington Hills and Bear Hill and how they were not paid overtime wages for time labeled as Non-Productive Hours.

130.    Following his employment in Massachusetts, Mr. Donohue transferred to a Technician II position at "Avalon Green" located at 500 Town Green Dr., Elmsford, NY 10523. While working in New York, Mr. Donohue continued to be subjected to Defendant's Non-Productive Hours policy in the same manner as Massachusetts.

*Constance Anderson – Maryland and Virginia Leasing Consultant and Maintenance Coordinator*

131.    Constance Anderson ("Ms. Anderson") was employed with AvalonBay a Leasing Consultant and a Maintenance Coordinator from March 2012 through September 2014.  Ms. Anderson began her employment as a New York Leasing Consultant.

24

132.    In May 2014, Ms. Anderson transferred to a Maintenance Coordinator position at "Avalon Ballston Square" located at 850 N Randolph St, Arlington, VA 22203. In July 2014, Ms. Anderson transferred to a Leasing Consultant position at "Avalon at Grosvenor Station" located at 10306 Strathmore Hall St, North Bethesda, MD 20852.

133.    Ms. Anderson was paid hourly both as a Maintenance Coordinator and a Leasing Consultant. Ms. Anderson was subjected to Defendant's Non-Productive Hours policy at each of her assigned properties in New York, Virginia, and Maryland.

134.    Ms. Anderson and her Maintenance Coordinator and Leasing Consultant co-workers are the New York, Virginia, and Maryland properties, were not paid overtime wages for time labeled as "Non-Productive Hours."

*Jeanelle Mothersill* – *New York, New Jersey, and Connecticut Leasing Consultant*

135.    Jeanelle Mothersill ("Ms. Mothersill") has worked as a Leasing Consultant at Defendant's properties in New York, New Jersey, and Connecticut.

136.    Ms. Mothersill was subjected to Defendant's Non-Productive Hours policy at each of her assigned properties

## FLSA COLLECTIVE ACTION ALLEGATIONS

137.    Plaintiffs seek to bring this suit pursuant to 29 U.S.C. § 216(b) on their own behalf as well as those in the following class:

> Current and former non-exempt employees of Defendant who perform or performed any work in any of Defendant's locations in excess of forty (40) hours per week, which was classified as "Non-Productive Hours," who give consent to file a cause of action to recover overtime compensation which is legally due them for the time worked in excess of forty (40) hours in a given work week ("FLSA Plaintiffs").

138.    Plaintiffs are similarly situated to all such individuals because while employed by Defendant they and all FLSA Plaintiffs performed similar tasks, were subject to the same laws and

regulations, were paid in the same or similar manner, were paid the same or similar rate, were required to work in excess of forty (40) hours per work-week, and were not paid the required one and a half (1 ½) times their respective regular rates of pay for overtime worked for all hours worked including "Non-Productive Hours."

139.    Defendant treated all FLSA Plaintiffs similarly in requiring them to work in excess of forty (40) hours per work week without adequate overtime compensation for all hours worked including "non-productive hours."  They were regularly and specifically scheduled to work more than forty (40) hours per work week, yet Defendant did not pay them the statutorily required overtime compensation for all hours including "Non-Productive Hours." This practice was enforced against all employees in similar or identical fashion.

## COLLECTIVE ACTION ALLEGATIONS

140.    The Plaintiffs bring the First Cause of Action, a FLSA claim, on behalf of themselves and all similarly situated persons who work or have worked as non-exempt employees for Defendant, who elect to opt-in to this action (the "FLSA Collective").

141.    Defendant is liable under the FLSA for, *inter alia,* failing to properly compensate the Plaintiffs and the FLSA Collective.

142.    Consistent with Defendant's policy, pattern and/or practice, the Plaintiffs and the FLSA Collective were not paid the appropriate premium overtime compensation for all hours worked beyond forty (40) per workweek.

143.    All of the work that the Plaintiffs and the FLSA Collective have performed has been assigned by Defendant, and/or Defendant has been aware of all of the work that the Plaintiffs and the FLSA Collective have performed.

144.    As part of its regular business practice, Defendant has intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to the

Plaintiffs and the FLSA Collective. This policy, pattern and/or practice includes, but is not limited to: willfully failing to pay its employees, including Plaintiffs and the FLSA Collective, the appropriate premium overtime wages for all hours worked in excess of 40 hours in a workweek; and willfully failing to record all of the time that its employees, including the Plaintiffs and the FLSA Collective, have worked for the benefit of Defendant.

145.    Defendant is aware that federal law required them to pay the Plaintiffs and the FLSA Collective overtime wages for all of the hours they worked and overtime premiums for hours worked in excess of 40 hours per week.

146.    The Plaintiffs and the FLSA Collective were subject to the Defendant's same policy and practice of categorizing and failing to pay overtime wages for "Non-Productive Hours."

147.    Defendant's unlawful conduct has been widespread, repeated, and consistent.

148.    There are many similarly situated current and former employees who have been denied overtime compensation in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

149.    Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

150.    In recognition of the services the Plaintiffs have rendered and will continue to render to the FLSA Collective, the Plaintiffs will request payment of service awards upon resolution of this action.

## CLASS ACTION ALLEGATIONS

151.    The Plaintiffs bring the Second and Third Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf of a class of persons consisting of:

All current and former non-exempt employees for Defendant, who perform or performed any work in any of Defendant's locations in excess of forty (40) hours per week, which was classified as "Non-Productive Hours," between November 27, 2011 and the date of final judgment in this matter (the "Rule 23 Class").

152.     Excluded from the Rule 23 Class are Defendant, Defendant's legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendant; the Judge to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

153.     The members of the Rule 23 Class are so numerous that joinder of all members is impracticable. Upon information and belief, the size of the Rule 23 Class is at least 100 individuals. Although the precise number of such employees is unknown, the facts on which the calculation of that number depends are presently within the sole control of Defendant.

154.     Defendant has acted or has refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

155.     Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting them individually and include, but are not limited to, the following:

   a.   whether Defendant violated NYLL Articles 6 and 19, and the supporting New York State Department of Labor Regulations;

   b.   whether Defendant correctly compensated Plaintiffs and the Rule 23 Class for hours worked in excess of 40 hours per workweek;

c.   whether Defendant failed to keep true and accurate time and pay records for all hours worked by Plaintiffs and the Rule 23 Class, and other records required by the NYLL;

d.   whether Defendant's policy of failing to pay workers was instituted willfully or with reckless disregard of the law; and

e.   the nature and extent of class-wide injury and the measure of damages for those injuries.

156.    The claims of the Plaintiffs are typical of the claims of the Rule 23 Class they seek to represent.  The Plaintiffs and all of the Rule 23 Class members work, or have worked, for Defendant.  The Plaintiffs and the Rule 23 Class members enjoy the same statutory rights under the NYLL, including to be properly compensated for all overtime hours worked.  The Plaintiffs and the Rule 23 Class members have all sustained similar types of damages as a result of Defendant's failure to comply with the NYLL.  The Plaintiffs and the Rule 23 Class members have all been injured in that they have been uncompensated or under-compensated due to Defendant's common policies, practices, and patterns of conduct.

157.    The Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.  The Plaintiffs understand that as class representatives, they assume a fiduciary responsibility to the class to represent its interests fairly and adequately.  The Plaintiffs recognize that as class representatives, they must represent and consider the interests of the class just as they would represent and consider their own interests.  The Plaintiffs understand that in decisions regarding the conduct of the litigation and its possible settlement, they must not favor their own interests over the class.  The Plaintiffs recognize that any resolution of a class action must be in the best interest of the class.  The Plaintiffs understand that in order to provide adequate

29

representation, they must be informed of developments in litigation, cooperate with class counsel, and testify at deposition and/or trial.  The Plaintiffs have retained counsel competent and experienced in complex class actions and employment litigation.  There is no conflict between the Plaintiffs and the Rule 23 members.

158.    In recognition of the services the Plaintiffs have rendered and will continue to render to the Rule 23 Class, the Plaintiffs will request payment of service awards upon resolution of this action.

159.    A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendant's violations of the NYLL, as well as its common and uniform policies, practices, and procedures.  Although the relative damages suffered by individual Rule 23 Class members are not *de minimis,* such damages are small compared to the expense and burden of individual prosecution of this litigation.  The individual Plaintiffs lack the financial resources to conduct a thorough examination of Defendant's timekeeping and compensation practices and to prosecute vigorously a lawsuit against Defendant to recover such damages.  In addition, class litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's practices.

160.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

## CLASS-WIDE FACTUAL ALLEGATIONS

161.    The Plaintiffs and the members of the Rule 23 Class and the FLSA Collective (collectively "Class Members") have been victims of a common policy and plan perpetrated by Defendant that have violated their rights under the FLSA and the NYLL by denying them proper

overtime compensation. At all times, Defendant's unlawful conduct, policies, and patterns or practices described in this Class Action Complaint have been willful.

**<u>Wage and Hour Violations</u>**

162.    As part of their regular business practice, Defendant has intentionally, willfully and repeatedly harmed the Plaintiffs and Class Members by engaging in a pattern, practice, *and/or* policy of violating the FLSA and the NYLL as described in this Class Action Complaint.  This pattern, practice, and/or policy includes, but is not limited to the following: failing to pay the Plaintiffs and Class Members proper overtime compensation for the hours they worked in excess of 40 hours in a workweek.

163.    Upon information and belief, Defendant's unlawful conduct described in this Class Action Complaint has been pursuant to a corporate policy or practice of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

164.    Defendant's unlawful conduct has been widespread, repeated, and consistent.

165.    Defendant's unlawful conduct, as set forth in this Class Action Complaint, has been intentional, willful, and in bad faith, and has caused significant damages to the Plaintiffs and Class Members.

166.    Defendant was aware that the practices described in this Class Action Complaint were unlawful. Defendant has not made a good faith effort to comply with the law with respect to the compensation of the Plaintiffs and Class Members.

167.    Defendant's deceptive conduct prevented the Plaintiffs and Class Members from discovering or asserting their claims any earlier than they did. As such, Plaintiffs and Class Members are entitled to equitable tolling.

## COUNT I

## VIOLATION OF FEDERAL FAIR LABOR STANDARDS ACT (OVERTIME) AS A COLLECTIVE ACTION

168.   The Plaintiffs, on behalf of themselves and all others similarly situated reallege and incorporate by reference all allegations in all preceding paragraphs.

169.   Section 207(a)(1) of the FLSA provides that no employer shall employ any of its employees for a workweek longer than forty (40) hours unless such employee receives compensation for her employment in excess of the hours above specified at a rate not less than the higher of one-and-one-half (1 ½) times the regular rate at which she is employed or one-and-one half times the Federal Minimum Wage.

170.   At all times, the Plaintiffs were "employees" covered by the FLSA, 29 U.S.C. § 207(a)(1), and Defendant was the Plaintiffs' "employer" under FLSA, 29 U.S.C. § 207(a)(2).

171.   Defendant, as the Plaintiffs' employer, was obligated to compensate the Plaintiffs at the overtime rate of one-and-one-half (1½) times the higher of the Plaintiffs' regular rate of pay or the applicable federal minimum wage for all hours worked per week in excess of forty (40).

172.   As set forth above, Defendant failed and refused to compensate the Plaintiffs properly, and as required by the FLSA, for all overtime hours worked each week in excess of forty (40) hours.

173.   Defendant's failure and refusal to pay the Plaintiffs as required by the FLSA for overtime hours worked each week was willful and intentional, and was not in good faith. The conduct of Defendant was done in conscious disregard of the Plaintiffs' rights. Therefore, the Plaintiffs are entitled to equitable and injunctive relief, an award of punitive damages, compensatory damages, and other expenses be determined at trial.

## COUNT II

### VIOLATION OF NEW YORK LABOR LAW (UNPAID OVERTIME) AS A CLASS CLAIM

174. The Plaintiffs, on behalf of themselves and all others similarly situated reallege and incorporate by reference all allegations in all preceding paragraphs.

175. The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendant, and protect the Named Plaintiffs and the members of the Rule 23 Class.

176. Defendant has failed to pay the Plaintiffs and the members of the Rule 23 Class the premium overtime wages to which they are entitled under the NYLL and the supporting New York State Department of Labor Regulations for all hours worked beyond 40 per workweek.

177. Defendant has failed to keep, make, preserve, maintain, and furnish accurate records of time worked by the Plaintiffs and the members of the Rule 23 Class.

178. Through its knowing or intentional failure to pay the Plaintiffs and the members of the Rule 23 Class overtime wages for hours worked in excess of 40 hours per workweek, Defendant has willfully violated the NYLL, Article 19, §§ 650 *et seq.,* and the supporting New York State Department of Labor Regulations.

179. Due to Defendant's willful violations of the NYLL, the Plaintiffs and the members of the Rule 23 Class are entitled to recover from Defendant their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## COUNT III

### VIOLATION OF NEW YORK LABOR LAW (FAILURE TO PROVIDE PROPER WAGE STATEMENTS) AS A CLASS CLAIM

180.     The Plaintiffs, on behalf of themselves and all others similarly situated reallege and incorporate by reference all allegations in all preceding paragraphs.

181.     Defendant has willfully failed to furnish the Plaintiffs and the members of the Rule 23 Class with statements with every payment of wages as required by NYLL, Article 6, § 195(3), listing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; and the number of regular and overtime hours worked.  Through their knowing or intentional failure to provide Plaintiffs and the members of the Rule 23 Class with the accurate wage statements required by the NYLL, Defendant has willfully violated NYLL, Article 6, § § 190 *et seq.,* and the supporting New York State Department of Labor Regulations.

182.     Due to Defendant's willful violations of NYLL, Article 6, § 195(3), the Plaintiffs and the members of the Rule 23 Class are entitled to statutory penalties of two hundred and fifty dollars for each day that Defendant failed to provide the Plaintiffs and the members of the Rule 23 Class with accurate wage statements, or a total of five thousand dollars each, reasonable attorneys' fees, costs, and injunctive and declaratory relief, as provided for by NYLL, Article 6, § 198(l-d).

## COUNT IV

### UNPAID OVERTIME IN VIOLATION OF STATE LAWS
### AS A CLASS CLAIM

183.     The Plaintiffs, on behalf of themselves and all others similarly situated reallege and incorporate by reference all allegations in all preceding paragraphs.

184.     The overtime wage provisions of the laws governing the payment of overtime wages in the states of California, Connecticut, Florida, Maryland, Massachusetts, New Jersey,

Pennsylvania, Rhode Island, Texas, Virginia, Washington, and the District of Columbia and their supporting regulations apply to Defendant, and protect the Named Plaintiffs and the members of the Rule 23 Class.

185.    Defendant has failed to pay the Plaintiffs and the members of the Rule 23 Class the premium overtime wages to which they are entitled in violation of the following state laws, common laws, and supporting regulations:

        a.   CA Labor Code §§ 500 *et seq.*;

        b.   CT Gen. Stat. §§ 31-76b *et seq.*;

        c.   Florida common law;

        d.   MD Lab & Emp Code §§ 3-425, *et seq.*;

        e.   MA Gen L ch 151 §§ 1A *et seq.*;

        f.   NJ Rev Stat §§ 34:11-56A *et seq.*;

        g.   43 PS Labor §§ 333.104 *et seq.*;

        h.   RI Gen L §§ 28-12 *et seq.*;

        i.   Texas Labor Code ch §§ 61, *et seq.*;

        j.   Virginia common law;

        k.   RCW 49.46, *et seq.*; and

        l.   DC Stat. §§ 32-1001, *et seq*.

186.    Defendant has failed to keep, make, preserve, maintain, and furnish accurate records of time worked by the Plaintiffs and the members of the Rule 23 Class.

187.    Through its knowing or intentional failure to pay the Plaintiffs and the members of the Rule 23 Class overtime wages for hours worked in excess of 40 hours per workweek, Defendant has willfully violated the labor laws (unpaid overtime) of California, Connecticut,

Florida, Maryland, Massachusetts, New Jersey, Pennsylvania, Rhode Island, Texas, Virginia, Washington, and the District of Columbia and their supporting regulations

188.     Due to Defendant's willful violations of the labor laws (unpaid overtime) of California, Connecticut, Florida, Maryland, Massachusetts, New Jersey, Pennsylvania, Rhode Island, Texas, Virginia, Washington, and the District of Columbia and their supporting regulations, the Plaintiffs and the members of the Rule 23 Class are entitled to recover from Defendant their unpaid overtime wages, liquidated damages as provided for by the laws referenced herein, reasonable attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## COUNT V

## UNJUST ENRICHMENT UNDER STATE LAW
## AS A CLASS CLAIM

189.     The Plaintiffs, on behalf of themselves and all others similarly situated reallege and incorporate by reference all allegations in all preceding paragraphs.

190.     Defendants have benefited from the money retained by the failure to pay overtime compensation resulting from the unlawful and inequitable acts alleged in this Complaint.

191.     Defendant's financial benefit resulting from its unlawful and inequitable acts is traceable to unpaid overtime wages owed to its employees, including Plaintiffs and members of the Class.

192.     Plaintiffs and the Class have conferred upon Defendant an economic benefit, in the nature of unpaid work in excess of forty (40) per week, to the economic detriment of Plaintiffs and the Class.

193.     The economic benefit of unpaid overtime compensation derived by Defendant through AvalonBay's Non-Productive Hours policy is a direct and proximate result of Defendant's unlawful practices.

194.     The financial benefits derived by Defendant rightfully belongs to Plaintiffs and the Class, as Plaintiffs and the Class were not compensated for all hours they worked in excess of forty (40) per week during the Class Period, inuring to the benefit of Defendant.

195.     It would be inequitable under unjust enrichment principles under the laws and supporting regulations of California, Connecticut, Florida, Maryland, Massachusetts, New Jersey, New York, Pennsylvania, Rhode Island, Texas, Virginia, Washington, and the District of Columbia, for Defendant to be permitted to retain any of the unpaid wages retained and/or derived from Defendant's unfair and unconscionable methods, acts, and compensation practices alleged in this Complaint.

196.     Defendant is aware of and appreciates the benefits bestowed upon it by Plaintiffs and the Class.

197.     Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiffs and the Class all unlawful or inequitable proceeds it received and/or retained.

198.     A constructive trust should be imposed upon all unlawful or inequitable sums received and/or retained by Defendant traceable to Plaintiffs and the Class.

199.     Plaintiffs and the Class have no adequate remedy at law.

## **PRAYER FOR RELIEF**

**WHEREFORE,** the Plaintiffs, on behalf of themselves and all other similarly situated persons, respectfully request that this Court grant the following relief:

A.     The Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all employees who are presently working, or have at any time during the six years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, worked for Defendant.  Such notice shall inform them that

this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.      Unpaid overtime pay, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.      Designation of the Plaintiffs as representatives of the Rule 23 Class and counsel of record as Class Counsel;

E.      Payment of reasonable service awards to the Plaintiffs, in recognition of the services that have rendered and will continue to render to the FLSA Collective and Rule 23 Class, and the risks they have taken on behalf of the FLSA Collective and Rule 23 Class;

F.      Issuance of a declaratory judgment that the practices complained of in this Class Action Complaint are unlawful under the NYLL, Article 6, § § 190 *et seq.,* NYLL, Article 19, § § 650 *et seq.,* and the supporting New York State Department of Labor Regulations;

G.      Unpaid overtime pay, misappropriated gratuities, unlawful deductions, uniform-related expenses, and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

H.      Unpaid overtime pay, misappropriated gratuities, unlawful deductions, uniform-related expenses, and liquidated damages permitted by law pursuant to the laws of California, Connecticut, Florida, Maryland, Massachusetts, New Jersey, Pennsylvania, Rhode Island, Texas, Virginia, Washington, and the District of Columbia;

I.      Declare the acts alleged herein to be unlawful under the state statutes set forth above, and the common law of unjust enrichment of the states and territories set forth above;

J.      Grant Plaintiffs and the Class equitable relief in the nature of disgorgement, restitution, and the creation of a constructive trust to remedy Defendant's unjust enrichment Award Plaintiffs damages as provided by law in an amount to be determined at trial;

K.      Prejudgment and post-judgment interest;

L.      An injunction requiring Defendant to pay all statutorily required wages and cease the unlawful activity described herein pursuant to the NYLL;

M.      Reasonable attorneys' fees and costs of the action; and

N.      Such other relief as this Court shall deem just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.


Dated:  New York, New York
        February 5, 2018

                          Respectfully submitted,

                          **HACH ROSE SCHIRRIPA & CHEVERIE LLP**

                          By: ____/s/ Frank R. Schirripa
                                  Frank R. Schirripa
                                  John A. Blyth
                                  112 Madison Avenue, 10th Floor
                                  New York, NY 10016
                                  Telephone: (212) 213-8311
                                  Facsimile: (212) 779-0028

                                  *Counsel for Plaintiffs and Putative Class*