**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
ERIKA BROWN, KAMARIEA MAGETTE,
and DIANA RUFUS, on behalf of themselves
and all others similarly situated,

                      Plaintiffs,

           - against -

AVALONBAY COMMUNITIES, INC.

                   Defendant.
-------------------------------------------------------X

**MEMORANDUM**
**AND ORDER**

CV 17-6897 (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

## I.    PRELIMINARY STATEMENT

      Plaintiffs Erika Brown ("Brown"), Kamariea Magette ("Magette"), and Diana Rufus

("Rufus") (collectively, "Plaintiffs") commenced this putative collective and class action against

Defendant AvalonBay Communities, Inc. ("AvalonBay" or "Defendant") for violations of the

Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and myriad other

state wage and hour laws.  *See generally* Plaintiff's Amended Complaint ("Am. Compl.")

[DE 10].  Plaintiffs seek to recover, among other things, for Defendant's alleged failure to pay

overtime wages.  *See id*.  Plaintiffs now move for conditional certification as a collective action

and for permission to disseminate court-authorized notice, pursuant to Section 216(b) of the

FLSA.  *See generally* Plaintiffs' Memorandum in Support of their Motion for Conditional

Certification ("Pls.' Mem.") [DE 18]; Plaintiffs' Memorandum in Reply ("Pls.' Reply") [DE 21].

Defendant opposes Plaintiffs' motion, arguing that Plaintiffs have failed to make the modest

factual showing required for conditional certification.  *See generally* Defendant's Memorandum

in Opposition to Plaintiffs' Motion ("Def.'s Opp'n.") [DE 20].

After reviewing the motion papers submitted by counsel as well as the applicable law, the Court GRANTS Plaintiffs' motion for the reasons set forth below and subject to the directives of this Memorandum and Order.

## II.   BACKGROUND

### A.   Allegations in Plaintiffs' Amended Complaint

The following facts taken from Plaintiffs' Amended Complaint are assumed to be true for purposes of the instant motion.  AvalonBay is a publicly traded real estate investment trust incorporated in Maryland and headquartered in Arlington, Virginia.  Am. Compl. ¶ 6. AvalonBay develops, owns, operates, manages, and maintains luxury apartment communities throughout the United States.  *Id.*  Members of the collective and putative class in this action are current and former hourly employees of AvalonBay who worked under various job titles, including "Leasing Consultants" (also known as "Community Concierges"), "Technicians" (which includes "Technician 1," "Technician 2," and "Technician 3" positions), and other maintenance and service-related positions.  *Id.* ¶ 7.  Named Plaintiffs Brown, Magette, and Rufus are current and former Leasing Consultants assigned to work at multiple AvalonBay properties in New York.  *Id.* ¶ 8.  As Leasing Consultants, Plaintiffs were responsible for showing and renting units to residents and prospective residents.  *Id.*  Their employment spans the period from 2011 to the present.  *Id.*

#### 1.   *Plaintiff Brown*

Plaintiff Brown was employed as a Leasing Consultant at seven of AvalonBay's New York properties:  (1) "Avalon Commons" located at 313 Avalon Cir., Smithtown, NY 11787; (2) "Avalon Court" located at 100 Court N. Dr., Melville, NY 11747; (3) "Avalon Rockville Centre" located at 80 N. Centre Ave., Rockville Centre, NY 11570; (4) "Avalon Garden City" located at 998 Stewart Ave., Garden City, NY 11530; (5) "Avalon Towers" located at 10 W. Broadway,

Long Beach, NY 11561; (6) "Avalon Fort Greene" located at 343 Gold St., Brooklyn, NY 11201; and (7) "Avalon Riverview" located at 4-75 48th Ave., Long Island City, NY 11109.  Am. Compl. ¶ 23.  Brown was employed by AvalonBay for approximately twenty-five months, from May 28, 2012 to June 30, 2014.  *Id*. ¶ 24.  Her primary work duties consisted of leasing units to tenants and prospective tenants at her assigned property.  *Id*. ¶ 25.  She was also responsible for staging apartments and assisting tenants with moving in and out.  *Id*.  Brown worked with approximately one to five other Leasing Consultants at each of her assigned properties, including April Converse ("Converse"), who was employed with AvalonBay from 2008 to 2013.  *Id*. ¶ 26.  Converse worked with Brown at Avalon Commons in Smithtown, NY, and with Danielle Martin ("Martin"), who was employed with AvalonBay from September 2009 to June 2014.  *Id*.  Martin worked with Brown at Avalon Fort Greene in Brooklyn, NY as well as Avalon Riverview in Long Island City, NY.  *Id*.  Depending on her assigned property, Brown's work schedule was either 8:30 a.m. to 5:30 p.m. or 9 a.m. to 6 p.m., five days per week, with a one-hour lunch break each day.  *Id*. ¶ 66.  Her rate of pay was $22 per hour.  *Id*.  Brown recorded her time by using Defendant's finger print system to "clock in" when she arrived at the premises and "clock out" when she left for the day.  *Id*. ¶ 67.  She also clocked in and out when she took her one-hour lunch break.  *Id*.

### 2.    *Plaintiff Rufus*

Plaintiff Rufus has worked at various AvalonBay properties as both a Concierge and a Leasing Consultant.  Am. Compl. ¶ 30.  She began her employment with AvalonBay in 2011 as a Concierge at AvalonBay Fort Green.  *Id*. ¶ 31.  As a Concierge, Rufus was primarily responsible for customer service, and she would greet residents, check-in visitors, and distribute packages to residents.  *Id*. ¶ 32.  Rufus worked with three to five other Concierges at Avalon Fort Greene,

including Gladys Galarza ("Galarza"). *Id*. ¶ 33. As a Concierge, Rufus' schedule was 7 a.m. to 3 p.m., Sunday through Thursday, with a one-hour lunch break each day. *Id*. ¶ 70. Her rate of pay as a Concierge was $20.22 per hour. *Id*. On February 13, 2013, Rufus transitioned from a Concierge position at Avalon Fort Greene to a Leasing Consultant position at that location – a position she held from 2013 to February 2017. *Id*. ¶ 34. While a Leasing Consultant at Avalon Fort Greene, Rufus' work schedule was 9 a.m. to 6 p.m., five days per week, with a one-hour break for lunch each day. *Id*. ¶ 75. Her rate of pay as a Leasing Consultant at Avalon Fort Green was $22.96 per hour. Rufus worked with approximately three to five other Leasing Consultants while at Avalon Fort Green, including Plaintiff Brown, Plaintiff Magette, and current Leasing Consultants Jeanelle Mothersill ("Mothersill"), David Greene ("Greene"), Denise Torres ("Torres"), Richard Castillo ("Castillo"), Nazila Ali ("Ali"), and Shafira C. *Id*. ¶ 36. Currently, Rufus works with two other Leasing Consultants at Avalon Brooklyn Bay, where her schedule is 9 a.m. to 6 p.m. and her rate of pay is $23.63 per hour. *Id*. ¶ 76. Throughout her employment with AvalonBay, Rufus recorded her time by using a finger print system to "clock in" when she arrived at the premises and "clock out" when she left for the day. *Id*. ¶ 78. She also clocked in and out when she took her one-hour lunch break. *Id*.

### 3.     *Plaintiff Magette*

Plaintiff Magette was employed by Defendant as a Leasing Consultant at Avalon Fort Greene for approximately two years and eight months, from July 2012 to March 2015. Am. Compl. ¶ 40. Magette worked with approximately three to five other Leasing Consultants while working at Avalon Fort Greene, including Plaintiff Rufus and Jeanelle Mothersill. *Id*. ¶ 42. While at Avalon Fort Greene, Magette's work schedule was 9 a.m. to 6 p.m., five days a week, with a one-hour break for lunch each day. *Id*. ¶ 82. Magette recorded her time by using

4

Defendant's finger print system to "clock in" when she arrived and "clock out" when she left for the day. *Id.* ¶ 84. She also clocked in and out when she took her one-hour lunch break. *Id.*

### 4.    *Defendant's Allegedly Unlawful Practices*

Plaintiffs allege that AvalonBay improperly categorized certain time worked by Plaintiffs and other putative class and collective members as "Non-Productive Hours." Am. Compl. ¶ 9. Specifically, Defendant required Plaintiffs and their co-workers to attend work-related meetings and events, which were labeled as "non-productive" time. As per Defendant's practice, an employees' "non-productive" hours are not eligible for overtime compensation even when an employee works more than 40 hours in a work week. *Id.* ¶10. Plaintiffs contend that Defendant's policy and practice of assigning different pay rates for productive and non-productive hours is a unilateral employment decision that is not reflected in any agreements between Defendant and its employees. *Id.* ¶ 11.

According to Plaintiffs and other current and former AvalonBay workers, Defendant's Non-Productive Hour policy was not limited to maintenance and service workers employed at Defendant's New York properties. To the contrary, this was a nation-wide practice applicable to all hourly employees, including Leasing Consultants, Concierges, Maintenance Technicians, and other service-related employees working at all AvalonBay properties throughout the United States. Am. Compl. ¶ 14. Plaintiffs state that Defendant classified time spent at staff meetings, training sessions, employee lunches, and other work-related events which Plaintiffs and other putative collective members were required to attend, as "non-productive hours." *Id.* ¶ 85. These required events could last for several hours depending on the nature of the event. *Id.* Plaintiffs clam they often had discussions with their Leasing Consultant and Concierge co-workers, including Mothersill, Ali, Gutie, Whiteman, Vargas, Keith, and Sierra, regarding Defendant's

Non-Productive Hours policy.  *Id.* ¶ 89.  Pursuant to the policy, any "non-productive" work exceeding 40 hours per week was compensated at Plaintiffs' regular rate of pay, and, therefore, if Plaintiffs worked 45 hours in a given week and five hours were "non-productive" hours, they would receive their regular rate of pay for all 45 hours.  *Id.* ¶ 93.

Plaintiffs allege that Defendant actually admitted that its Non-Productive Hours policy was unlawful.  In the fall of 2017, AvalonBay held several staff meetings at which Supervisors, including AvalonBay's Director of National Labor Board Relations and Human Resources, stated that the company had made a mistake with respect to overtime compensation.  Am. Compl. ¶¶ 100-101.  Consistent with these admissions, Plaintiffs allege that "[o]n November 10, 2017, Plaintiff Diana Rufus' paystub for the period of 10/20/2017 – 11/04/2017 reflect[ed] the following entries: (1) 'Settlement' for $1,676.48; and (2) 'NonProdHrs' for $424.13." *Id.* ¶ 102. The Amended Complaint avers that these payments are evidence that "Defendant is recognizing, in part, the illegality of its Non-Productive policy. Defendant's pay-off falls short, however, given the number of employees affected by this policy." *Id.* ¶ 104.  According to the Amended Complaint, "[t]he quarterly meetings alone, which were attended by Plaintiffs, Leasing Consultants, and hourly employees from various states, demonstrate how the harm caused by the Non-Productive Hours policy is significantly broader than maintenance and service employees working at the Company's New York properties." *Id.*

Based on the above allegations, Plaintiffs' Amended Complaint asserts causes of action for failure to pay overtime wages under both the FLSA and NYLL, failure to provide wage statements under the NYLL, and failure to pay overtime under the state law of twelve other states and jurisdictions.  *See generally* Am. Compl.

**B.      Declarations in Support of the Instant Motion**

With their motion, Plaintiffs have submitted seven declarations attached to the Declaration of Attorney Frank R. Schirripa ("Schirripa Decl.") [DE 19], along with several other exhibits in support.  The Court will briefly address the assertions made in the declarations which are relevant to the instant motion.

### 1.      *Declaration of Plaintiff Brown*

In her declaration, Plaintiff Brown states that "[b]ased on my personal knowledge and conversations with other individuals who have worked as Leasing Consultants for AvalonBay, including Ms. Martin and other Leasing Consultants co-workers at my assigned properties, I know that AvalonBay's rules on recording work hours applied equally to all Leasing Consultants."  Declaration of Erika Brown, attached as Exhibit A to the Schirripa Decl. ("Brown Decl.") ¶ 10.  She states that throughout her employment with Defendant, she consistently worked over 40 hours in a workweek and AvalonBay would regularly and unilaterally reclassify many hours worked in excess of 40 as "non-productive" hours.  *Id*. ¶¶ 11-12.  Plaintiff Brown states that she was regularly required to attend staff meetings, training sessions, lunches, and other work-related events between normal business hours, time for which was classified as "non-productive."  *Id*. ¶ 13.  She was also required to attend mandatory quarterly events every three months on Long Island where she met employees from other AvalonBay locations in New York, New Jersey, and Connecticut, and whom she learned were also receiving "non-productive" hours for these events.  *Id*. ¶¶ 14-15.  Plaintiff Brown states that she was never told what hours were classified as "non-productive."  *Id*. ¶ 17.  Moreover, the policy was not mentioned in any of her employment agreements and she only learned of the policy by examining her paystub.  *Id*. ¶ 18.

She states that she discussed the policy with her Leasing Consultant co-workers at each of the seven New York properties to which she was assigned.  *Id.* ¶ 20.

### 2.    *Declaration of Plaintiff Magette*

In her declaration, Plaintiff Magette also states that based on her personal knowledge, she knew that AvalonBay's rules on recording work hours applied equally to all Leasing Consultants.  Declaration of Kamariea Magette, attached as Exhibit B to the Schirripa Decl. ("Magette Decl.") ¶ 8.  She worked with three to five other Leasing Consultants at Avalon Fort Greene, "including Plaintiff Diana Rufust [ ], Janelle Morthersill [ ], and Danielle Martin."  *Id*. ¶ 4.  Throughout her employment with AvalonBay, Magette routinely worked in excess of 40 hours per week and was regularly required to attend staff meetings, training sessions, and other work-related events which were classified as "non-productive" hours.  *Id*. ¶¶ 10-11.  Like Brown, Plaintiff Magette states she had to attend quarterly events at which she met other Leasing Consultants from AvalonBay properties throughout New York, New Jersey, and Connecticut. *Id*. ¶ 12.  There, she learned that other Leasing Consultants were also subject to AvalonBay's "Non-Productive Hour" policy.  *Id*. ¶ 13.  Magette further states that she has "had discussions about AvalonBay's Non-Productive Hours policy with Ms. Mothersill who worked as a Leasing Consultant at AvalonBay's properties in New York, New Jersey, and Connecticut," and that she is "aware that Ms. Mothersill was subject to AvalonBay's NonProductive Hours policy while working at AvalonBay's New York, New Jersey and Connecticut properties."  *Id*. ¶ 14.  Magette states she was never told what hours were classified as "non-productive," and the policy was not mentioned in any of her employment agreements.  *Id*. ¶¶ 15-16.  She adds that she has discussed the policy with her Leasing Consultant co-workers at AvalonBay Fort Greene.  *Id*. ¶ 18.

### 3.     *Declaration of Constance Anderson*

In her declaration, Constance Anderson ("Anderson") states that she was employed with AvalonBay from 2012 to 2014, during which time she worked at five AvalonBay properties in New York, Virginia, and Maryland.  Declaration of Constance Anderson, attached as Exhibit C to the Schirripa Decl. ("Anderson Decl.") ¶ 1.  She worked as a Leasing Consultant at AvalonBay's New Rochelle, New York property with several other Leasing Consultants before transferring to a maintenance-related position known as "Maintenance Coordinator" or "Community Coordinator" at the Long Island City property.  *Id*. ¶¶ 2-3.  In 2013, she was transferred from New York to be a Community Coordinator in Virginia at an Arlington, Virginia AvalonBay property.  *Id*. ¶ 4.  From April to September 2014, Anderson worked as a Leasing Consultant at a Maryland property with several other Leasing Consultants, and was subsequently transferred to a separate Maryland property where she also worked as a Leasing Consultant with other Leasing Consultants.  *Id*. ¶¶ 5-6.

Anderson states that throughout her time with AvalonBay, she regularly worked in excess of 40 hours per week and AvalonBay would regularly and unilaterally reclassify many of her hours as "non-productive" hours.  Anderson Decl. ¶¶ 13-14.  This practice occurred at each of the New York, Maryland, and Virginia properties at which she worked.  *Id*. ¶ 14.  Like Plaintiffs Brown and Magette, Anderson states she had to attend mandatory staff meetings, training sessions, and similar work-related events, along with quarterly events, all of which were classified as "non-productive" time.  *Id*. ¶¶ 15-17.  Like herself, other Leasing Consultants and Community Coordinators at each of the properties where she worked were not paid overtime wages for "non-productive" hours worked in excess of 40 per week.  *Id*. ¶¶ 19-21.

### 4.    *Declaration of Steven Donohue*

Steven Donohue ("Donohue") was employed as a Maintenance Technician with AvalonBay from April 2015 to February 2016.  Declaration of Steven Donohue, attached as Exhibit D to the Schirripa Decl. ("Donohue Decl.") ¶ 1.  Donohue states he is an "opt-in" plaintiff in the related action, *Tanski v. AvalonBay*, CV 15-6260[1].  *Id*. ¶ 5.  Donohue worked as a Maintenance Technician at an AvalonBay property in Lexington, Massachusetts, with several other Maintenance Technicians, including "Joe" and "Brian," who had previously worked at another AvalonBay Massachusetts location.  *Id*. ¶¶ 2-3.  Donohue then worked as a Maintenance Technician at an AvalonBay property in Elmsford, New York.  *Id*. ¶ 4.  Throughout his employment with AvalonBay, Donohue consistently worked in excess of 40 hours per week, and while at both the Massachusetts and New York properties, AvalonBay would regularly and unilaterally reclassify many of his hours as "non-productive hours."  *Id*. ¶¶ 11-12.  Donohue and his Maintenance Technician co-workers were required to attend staff meetings, training sessions, and other work-related events, as well as quarterly events, time spent at which was categorized as "non-productive."  *Id*. ¶¶ 13-15.  Pursuant to this policy, Donohue was never paid overtime wages for "non-productive" hours worked in excess of 40 per week.  *Id*. ¶ 18.  Based on his conversations with "Joe" and "Brian," who had previously worked at other Massachusetts properties, Donohue knows that the Non-Productive Hours policy was applied at multiple Massachusetts locations.  *Id*. ¶ 16.  Additionally, Donohue states that like Brown, Magette, and Anderson, he was never provided any materials or otherwise made aware of Defendant's Non-Productive Hours policy.  *Id*. ¶ 17.

---

[1]    *Tanski v. AvalonBay* is a related action which has settled.

### 5.    *Declaration of Timothy Tanski*

In his declaration, Timothy Tanski ("Tanski") states that he was employed as a Maintenance Supervisor with AvalonBay from March 2014 until May 2015.  Declaration of Timothy Tanski, attached as Exhibit E to the Schirripa Decl. ("Tanski Decl.") ¶ 1.  He worked in this capacity at two New York properties, where he oversaw seven to ten maintenance employees.  *Id*. ¶¶ 2, 4.  Some of these individuals were Diego Santander, Richard Sardi, Gary Oldham, Donald Conklin, Thomas Venezia, and Junior Taylor.  *Id*. ¶ 5.  Tanski states he clocked in and out every day using a fingerprint system and was eligible to receive overtime compensation; however, was not paid overtime for hours worked in excess of 40 which were categorized as "non-productive."  *Id*. ¶ 9, 13.  Like the other declarants, Tanski states he had to attend meetings and trainings, as well as maintenance-specific meetings with maintenance staff from other New York and New Jersey AvalonBay properties.  *Id*. ¶¶ 14-16.  Through these meetings he learned other maintenance staff were receiving "non-productive" hours for time spent at these and similar events.  *Id*. ¶ 15.  Additionally, Tanski states he received "non-productive" hours for time spent on "runs" to purchase maintenance supplies twice per week.  *Id*. ¶ 17.  Similar to the other declarants, Tanski was not made aware of the Non-Productive Hour policy, and only found out about the policy after examining his paystubs.  *Id*. ¶¶ 20-21.

### 6.    *Declaration of Diego Santander*

Diego Santander ("Santander") was employed at AvalonBay from September 2007 to June 2014 as a Technician.  Declaration of Diego Santander, attached as Exhibit F to the Schirripa Decl. ("Santander Decl.") ¶¶ 1-3.  He worked at several New York properties and also attended meetings with Technicians from New York, New Jersey, and Connecticut.  *Id*. ¶ 4.  Among others, Santander worked with Maintenance Supervisor Tanski, from March 2014 until

June 2014.  *Id*. ¶ 9.  Like other employees, Santander also clocked in and out using AvalonBay's fingerprint system.  *Id*. ¶ 11.  He was eligible to receive overtime compensation and regularly worked in excess of 40 hours per week.  *Id*. ¶ 12.  However, AvalonBay would regularly and unilaterally classify many of Santander's hours as "non-productive."  *Id*. ¶¶ 14-15.  Santander was not paid overtime for these "non-productive" hours.  *Id*. ¶ 15.  He and other maintenance and service employees from New York, New Jersey, and Connecticut, including Tanski, Gary Oldham, Willie Genoa, Juan Manivesa, Diana Laplante, Mario Rodane, and Dominick Cotrone, were regularly present at staff meetings, training sessions, and other work-related events conducted during work hours, which AvalonBay classified as "non-productive."  *Id*. ¶ 16.  He learned that these employees also were not paid overtime for "non-productive" hours.  *Id*. ¶ 18.  Santander was never informed of the Non-Productive Hour policy when he was hired, and it was not mentioned in his employment contract.  *Id*. ¶ 20.

### C.    Relevant Procedural Background

Plaintiffs commenced this action on November 27, 2017.  *See* DE 1.  On December 26, 2017, the parties consented to this Court's jurisdiction for all purposes, pursuant to Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c), and that consent was "so ordered" by District Judge Feuerstein on December 27, 2017.  *See* DE 6, 8.  Plaintiffs filed the Amended Complaint in this matter on February 5, 2018.  *See* DE 10.  On April 25, 2018, counsel appeared before this Court for a status conference, at which time the Court set a timeline for Plaintiffs' prospective motion for conditional certification.  *See* DE 14.  The fully briefed motion was filed on June 7, 2018.  *See* DE 17-21.

III.   **THE PARTIES' POSITIONS**

A.     **Plaintiffs' Motion**

Plaintiffs contend that through their declarations and the declarations of several other

AvalonBay employees, combined with the Amended Complaint's well-pleaded factual

allegations, they have made a sufficient factual showing to satisfy the lenient evidentiary

standard for conditional certification of a collective action, with a collective defined as follows:

"all current and former, non-exempt AvalonBay Leasing Consultants, Concierges, maintenance

employees[,] and other non-exempt service employees, working at all of defendant's properties

throughout the United States, with the exception of New York maintenance employees."[2]  Pls.'

Mem. at 2 (alteration omitted).  Specifically, Plaintiffs argue that their pleadings and evidentiary

submissions show that (1) AvalonBay subjected its non-exempt Leasing Consultants,

Concierges, and maintenance workers to uniform employment practices throughout the United

States; (2) these employees consistently worked more than 40 hours a week to complete their

necessary duties; however, (3) in order to avoid paying higher rates for those overtime hours,

AvalonBay categorized time spent on mandatory, work-related events (including meetings,

trainings, and quarterly events) as "non-productive hours," which time was paid out at the

employees' regularly hourly rate; and (4) Plaintiffs have direct personal knowledge of these facts

because of the many discussions they had with other AvalonBay employees.  *See id.* at 8-11.

This showing is sufficient, they argue, to support a finding that Plaintiffs and the putative

---

[2]  In *Tanski v. Avalonbay Communities, Inc.*, No. CV 15-6260, 2017 WL 10858910
(E.D.N.Y. Mar. 31, 2017), this Court granted conditional certification of a collective limited to
maintenance workers at Defendant's New York properties, and denied Tanski's motion to the
extent he tried to certify a nationwide collective.  *See generally* DE 56 in CV 15-5620.
Accordingly, Plaintiffs state they do not seek to include New York maintenance employees as
part of the instant nationwide collective.

collective members are "similarly situated" in that they were all subjected to a uniform, unlawful policy.[3]

As to the scope of the proposed collective, Plaintiffs assert they have made a strong showing that "Defendant has uniformly subjected Plaintiffs and other Leasing Consultants, Concierges and maintenance employees at AvalonBay properties throughout the United States to the same compensation policies." Pls.' Mem. at 14. Plaintiffs contend that the declarations of Brown, Magette, Anderson, and Donohue "[d]emonstrate how AvalonBay's compensation practices, including its [Non-Productive Hours] policy, were applied uniformly to non-exempt employees working at NY, NJ, CT, MA, VA and MD properties. Notably, these make up *at least half* of the states where [Defendant] owns properties." *Id*. at 15 (emphasis in original). This evidence, Plaintiffs argue, indicates that "it is highly likely that the same degree of control and uniformity applies to Defendant's compensation practices imposed against workers employed in the other 3 to 6 states where AvalonBay operates." *Id*. In addition to their pleadings and declarations, Plaintiffs point out that as of April 5, 2018, the descriptions of job responsibilities as displayed in AvalonBay's on-line job postings for Leasing Consultant, Community Coordinator, Technician, and Concierge are uniform regardless of geographic location. *See id.* at 7-8.

In their motion, Plaintiffs seek to disseminate court-authorized notice via regular mail, as well as via email, and to post notice at all AvalonBay facilities. They also seek to text message notice to all potential opt-ins' mobile phones and to circulate a "reminder postcard." Pls.' Mem.

---

[3]   Plaintiffs also state that "Defendant's representatives at their New York properties have *admitted* that [ ] AvalonBay misapplied its NPH policy as it relates to overtime compensation," referencing paragraphs 99-104 of the Amended Complaint. Pls.' Mem. at 15 (emphasis in original).

at 18, 21.  Plaintiffs further request (1) the names and contact information of potential opt-in plaintiffs, specifically the last known telephone numbers, email addresses, social security numbers, dates of employment, titles, compensation rates, and hours worked per week for all of these employees going back to October 30, 2009, and (2) a six-year notice period and equitable tolling of the notice period.  *Id*. at 22, 24.

### B.  Defendant's Opposition

AvalonBay argues that Plaintiffs' motion for conditional certification must fail because its Non-Productive Hours policy is "facially legal" and, as a result, Plaintiffs cannot show that they and potential opt-in plaintiffs were victims of an unlawful policy, the standard for conditional certification as a collective action.  Def.'s Opp'n. at 9.  Defendant contends that "[w]here a challenged policy on its face appears lawful, a plaintiff must produce significant evidence of a de facto illegal policy, before a court may grant conditional certification."  *Id*. at 10 (internal quotation marks omitted).  As to how the policy is facially legal, Defendant maintains that, pursuant to the policy, "there are only a few instances when [Non-Productive Hours] should be recorded," specifically:  (1) to supplement hours to be paid for early closures due to holidays or extreme weather conditions; (2) for the remainder of the day off after a meeting or event; or (3) for awards which indicate a half or full day off.  *Id*.  "The coding of hours not worked as 'non-productive'" pursuant to AvalonBay's policy satisfies the Department of Labor's Interpretive Bulletin according to Defendant.  *Id*. at 11. "The Interpretive Bulletin expressly provides that payments for 'idle hours' 'when the employee is not at work' are 'not made as compensation for . . . hours of employment' and 'no part of such payments may be credited toward overtime compensation due under the [FLSA].'"  *Id*. (quoting 29 C.F.R. § 778.218(a)).

Defendant concedes that "Plaintiffs have presented some limited evidence indicating that a handful of individual employees at 17 properties in 4 states may have been subject to improper classification of time worked as [non-productive hours]." Def.'s Opp'n. at 15. However, this is the extent of their showing, Defendant contends, and, "at best," Plaintiffs have asserted that AvalonBay's Non-Productive Hour classification policy "was not properly applied to the three named Plaintiffs and the four other individuals who provided declarations accompanying Plaintiffs' motion, all of whom worked in only 4 of 13 jurisdictions in which AvalonBay operates properties." *Id*. at 13. Defendant argues that Plaintiffs have failed to identify a single individual who worked at any AvalonBay property in a state other than New York, Maryland, Massachusetts, or Virginia whom they claim was subjected to improper classification of time as non-productive hours. Because of this, Defendant asserts that conditional certification of a nationwide collective is inappropriate.[4] *See id*. at 16.

Apart from the geographic scope of the proposed collective, Defendant also opposes the categories of employees whom Plaintiffs propose should constitute the collective. Defendant states that the parties in the related *Tanski* matter agreed to a list of eleven titles to be included under "maintenance employees," only five of which are referenced in Plaintiffs' opening brief here. Def.'s Opp'n. at 20. Defendant contends that "[t]his ambiguity should be resolved before any putative collective action is conditionally certified." *Id*. at 21.

Should the Court proceed to conditionally certify a collective in this action, Defendant objects to the method of dissemination of the notice Plaintiffs seek. Defendant argues that notice

---

[4] Defendant acknowledges that Plaintiff Magette claims she had discussions with Jeanelle Mothersill, who worked as a Leasing Consultant at AvalonBay properties located in New York, New Jersey, and Connecticut. However, Defendant characterizes this evidence as "conclusory," and adds that "Ms. Mothersill never worked for AvalonBay in Connecticut." Def.'s Opp'n. at 18.

should only be posted in non-public areas of the workplace.  Def's. Opp'n. at 21.  Defendant

opposes dissemination by text message or email, as well as the request to distribute a "reminder

postcard."  *Id*. at 22.  As to the language of the proposed notice, Defendant has submitted

redlined edits it prefers.  *Id*. at 23.  To the extent a collective which includes multi-state

jurisdictions is conditionally certified, Defendant argues that the notice period should be limited

to the FLSA's three-year limitations period.  *Id*. at 21 n.17.

Finally, Defendant opposes Plaintiffs' request for expedited discovery of the detailed

identifying information for all potential collective members going back to October 30, 2009.

Any discovery of such individual information should, in Defendant's view, go back only three

years, to November 27, 2014.  Def.'s Opp'n. at 24.  Defendant does not oppose providing a

computer-readable lists of names, addresses, telephone numbers, email addresses, titles, dates of

employment, compensation rates, and hours worked per week for the AvalonBay properties

covered by an Order conditionally certifying a collective action.  *Id*. at 25.  However, Defendant

opposes providing social security numbers of potential collective members and opposes any

equitable tolling of the limitations period.  *Id*.

### C.    Plaintiffs' Reply

As to AvalonBay's Non-Productive Hours police being facially legal, Plaintiffs contend

that such a policy is unlawful in the absence of any agreement with employees.  Pls.' Reply at 3.

Plaintiffs assert that the Non-Productive Hours policy is not disclosed to employees upon their

hiring or at any other point during their employment.  Because the policy is not disclosed to

employees, they literally cannot agree to it, and the policy is rendered unlawful as a result.  *Id*.

Even if employees did agree to it, Plaintiffs state that AvalonBay implemented a materially

different policy than the one laid out in Defendant's opposition papers as the documented policy.

*Id*. at 4.  They further argue that this policy binds all putative collective members in a manner sufficient to conditionally certify a nationwide collective.  *Id*. at 5-6.  Plaintiffs claim they have identified, by name and position, more than a dozen individuals employed by AvalonBay in at least five[5] states.  *Id*. at 4.

As to the method of dissemination of potential notice, Plaintiffs take the position in their Reply that the method of dissemination set out by this Court in the related *Tanski* matter – posting in locations where employees congregate, such as staff lounges, break rooms, or clock-in stations – should be utilized here, and they have amicably agreed to withdraw their request for dissemination via text message and email.  Pls.' Reply at 10.  However, Plaintiffs still wish to circulate a "reminder postcard."  They have revised the proposed language of the postcard to read:  "The Court has taken no position in this case regarding the merits of the Plaintiffs' claims or of the Defendant' defenses.  The Court does not encourage or discourage your participation in this case."  *Id*.  Further, Plaintiffs state that the language of the proposed notice complies with the directives given by the Court in the related *Tanski* matter and they oppose further modifications. *Id*. at 12.

Finally, as to the request for expedited discovery of contact information, Plaintiffs clarify that they seek discovery of individuals employed at AvalonBay properties outside of New York going back to November 27, 2014 (three years), and of individuals employed within New York

---

[5]  Inexplicably, Plaintiffs do not appear to consider the evidence affecting AvalonBay properties in Connecticut here, although that evidence is referenced in their moving papers.  As a general matter, Defendant argues that evidence submitted by Plaintiffs only points to employees in four states.  One point of disagreement as to this issue is whether evidence regarding Jeanelle Mothersille's experience with the Non-Productive Hours policy during her employment in New Jersey is sufficient to certify a collective that covers employees in New Jersey.  *See* Def.'s Opp'n. at 18.

going back to November 27, 2011 (six years).  Pls.' Reply at 12.  Plaintiffs also withdraw their request for potential plaintiffs' social security numbers.  *Id*. at 13.

## IV.   APPLICABLE LAW

The FLSA provides, in pertinent part, as follows:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover . . . may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b).  Section 216(b) provides an employee with a private right of action to recover overtime compensation and/or minimum wages.  *Id*.; *Cabrera v. Stephens*, No. 16-CV-3234, 2017 WL 4326511, at *4 (E.D.N.Y. Sept. 28, 2017) (citing *Bifulco v. Mortg. Zone, Inc*., 262 F.R.D. 209, 212 (E.D.N.Y. 2009)) ("The FLSA provides a private right of action to recover unpaid overtime compensation and/or minimum wages."); *Moore v. Eagle Sanitation, Inc.*, 276 F.R.D. 54, 57 (E.D.N.Y. 2011) (citing 29 U.S.C. § 216(b)); *Gjurovich v. Emmanuel's Marketplace, Inc*., 282 F. Supp. 2d 101, 103 (S.D.N.Y. 2003) (quoting *Hoffmann v. Sbarro, Inc*., 982 F. Supp. 249, 260 (S.D.N.Y. 1997)).  "Although the FLSA does not contain a class certification requirement, such orders are often referred to in terms of 'certifying a class.'" *Bifulco*, 262 F.R.D. at 212 (quoting *Parks v. Dick's Sporting Goods, Inc*., No. 05 Civ. 6590, 2007 WL 913927, at *3 (W.D.N.Y. Mar. 23, 2007)).

Courts within the Second Circuit apply a two-step analysis to determine whether an action should be certified as an FLSA collective action.  *See Myers v. Hertz Corp.*, 624 F.3d 537,

544-45 (2d Cir. 2010) (noting that district courts within this Circuit have "coalesced around a two-step method" for analyzing collective action certification); *see also Keawsri v. Ramen-Ya Inc.*, No. 17-CV-2406, 2018 WL 279756, at \*5 (S.D.N.Y. Jan. 2, 2018) (citing *Myers*, 624 F.3d 544-45); *Bijoux v. Amerigroup New York, LLC*, No. 14-CV-3891, 2015 WL 4505835, at \*2 (E.D.N.Y. July 23, 2015) (citing the same), *report and recommendation adopted* by 2015 WL 5444944 (E.D.N.Y. Sept. 15, 2015).   First, the court determines whether the proposed collective members are "similarly situated." *Puglisi v. TD Bank, N.A.*, 998 F. Supp. 2d 95, 99 (E.D.N.Y. 2014) (quoting *Kalloo v. Unlimited Mech. Co. of NY, Inc.*, 908 F. Supp. 2d 344, 346 (E.D.N.Y. 2012)); *McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 442 (S.D.N.Y. 2012) (quoting *Myers*, 624 F.3d at 555).   If the court decides in the affirmative, then the proposed collective members must consent in writing to be bound by the result of the suit, or "opt-in."  *McGlone,* 867 F. Supp. 2d at 442 (citing *Cunningham v. Elec. Data Sys. Corp*, 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010)); *see* 29 U.S.C. § 216(b).   The second step, which typically occurs after the completion of discovery, requires the court to make factual findings whether the collective members are actually similarly situated.  *Rosario v. Valentine Ave. Discount Store, Co.*, 828 F. Supp. 2d 508, 514 (E.D.N.Y. 2011) (quoting *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)).   "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." *Bifulco*, 262 F.R.D. at 212 (quoting *Hens v. ClientLogic Operating Corp.*, No. 05-381S, 2006 WL 2795620, at \*4 (W.D.N.Y. Sept. 26, 2006)).

The instant motion concerns only the first step – whether the proposed opt-in members are "similarly situated" such that conditional certification should be granted.  At this stage, "the evidentiary standard is lenient," *Bifulco*, 262 F.R.D. at 212 (quoting *Rubery v. Buth-Na-*

*Bodhaige, Inc.*, 569 F. Supp. 2d 334, 336 (W.D.N.Y. Aug. 8, 2008)), and plaintiffs need only "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" *Myers*, 624 F.3d at 555 (quoting *Hoffmann*, 982 F. Supp. at 261); *see, e.g.*, *Perez v. Allstate Ins. Co.*, No. 11-CV-1812, 2014 WL 4635745, at *5 (E.D.N.Y. Sept. 16, 2014); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 552 (S.D.N.Y. 2013); *Cano v. Four M Food Corp.*, No. 08-CV-3005, 2009 WL 5710143, at *3 (E.D.N.Y. Feb 3, 2009); *Doucoure v. Matlyn Food, Inc.*, 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008). "In making this showing, 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan' is required." *Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-4950, 2009 WL 1706535, at *3 (E.D.N.Y. June 16, 2009) (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)). Moreover, courts have repeatedly stated that Section 216(b)'s "similarly situated" requirement is "considerably less stringent" than the requirements for class certification under Federal Rule of Civil Procedure 23, and "that a party seeking to maintain a collective action need not meet the requirements of Rule 23 for class certification." *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 481 (E.D.N.Y. 2001) (collecting cases); *see Dilonez v. Fox Linen Serv., Inc.*, 35 F. Supp. 3d 247, 252 (E.D.N.Y. 2014) (citing *Puglisi*, 998 F. Supp. 2d at 98-99, at *2; FED. R. CIV. P. 23).

At the initial certification stage, courts do not require proof of an actual FLSA violation, but rather require the existence of a "'factual nexus' [ ] between the plaintiff's situation and the situation of other potential plaintiffs." *Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 362 (E.D.N.Y. 2007) (quoting *Wraga v. Marble Lite, Inc.*, No. 05-CV-5038, 2006 WL 2443554, at *1 (E.D.N.Y. Aug. 22, 2006)); *see Fa Ting Wang v. Empire State Auto Corp.*, No. 14-CV-1491, 2015 WL 4603117, at *6 (E.D.N.Y. 2015); *see also Calderon v. King Umberto, Inc.*, 892 F.

Supp. 2d 456, 459 (E.D.N.Y. 2012) (citing *Jackson v. N.Y. Telephone Co.*, 163 F.R.D. 429, 431 (S.D.N.Y. 1995)).  This determination is typically based on the pleadings, affidavits, and declarations submitted by the plaintiff or plaintiffs.  *See generally Fa Ting Wang*, 2015 WL 4603117, at *5-6 (citing *Kalloo v. Unlimited Mech. Co. of N.Y., Inc*., 908 F. Supp. 2d 344, 346 (E.D.N.Y. 2012), *Brabham v. Mega Tempering & Glass Corp.*, No. 13 Civ. 54, 2013 WL 3357722, at *3 (E.D.N.Y. July 3, 2013)); *see also Robles v. Liberty Rest. Supply Corp.*, No. 12-CV-5021, 2013 WL 6684954, at *5 (E.D.N.Y. Dec. 18, 2013) (citing the same).

"Although plaintiff's 'burden of proof is low, it is not non-existent — certification is not automatic.'"  *Elamrani v. Henry Limousine, Ltd*., No. CV 15-2050, 2016 WL 5477590, at *4 (E.D.N.Y. Sept. 28, 2016) (quoting *Sanchez v. JMP Ventures, L.L.C*., 2014 WL 465542, at *1 (S.D.N.Y. 2014)).  As the Second Circuit has explained, "[t]he 'modest factual showing' cannot be satisfied simply by 'unsupported assertions.'"  *Myers*, 624 F.3d at 555 (quoting *Dybach v. State of Fla. Dep't of Corrections*, 942 F.2d 1562, 1567 (11th Cir. 1991)); *see Morales v. Plantworks, Inc.*, No. 05-CV-2349, 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (quoting Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, 7B Federal Practice and Procedure: Civil 3d § 1807, at 487-53 (2005)) (stating that "conclusory allegations are not enough" to meet the "modest factual showing" at the first stage of collective action certification).

The standard of proof, however, should still remain "low . . . because the purpose of this first stage is merely to determine *whether* 'similarly situated' plaintiffs do in fact exist."  *Myers*, 624 F.3d at 555 (citing *Hoffman*, 982 F. Supp. at 261) (emphasis in original); *see Trinidad*, 962 F. Supp. 2d at 553 (quoting the same).  With this in mind, courts have found that the allegations in the pleadings and the "personal observations of one plaintiff's affidavit" are "sufficient to make the modest factual showing necessary to conditionally certify" a collective.  *Hernandez v.*

*NGM Mgmt. Grp. LLC*, No. 12-CV-7795, 2013 WL 5303766, at *3 (S.D.N.Y. Sept. 20, 2013)

(collecting cases); *see Ella Shillingford v. Astra Home Care, Inc. d/b/a True Care Home*

*Healthcare*, No. 16 CIV. 6785, 2018 WL 1033243, at *3 (S.D.N.Y. Feb. 23, 2018)

("Accordingly, an FLSA collective action may be conditionally certified upon even a single

plaintiff's affidavit.") (citation omitted); *see also Cabrera v. Stephens*, No. 16CV3234, 2017 WL

4326511, at *5 (E.D.N.Y. Sept. 28, 2017) ("Conditional certification is regularly granted based

upon a complaint and one or two affidavits that collectively demonstrate the requisite nexus.")

(citation omitted); *see also Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-CV-2625, 2015 WL

4240985, at *3 (S.D.N.Y. July 13, 2015) (finding that the allegations in the complaint and the

affidavit of one named plaintiff "met the minimal burden at this preliminary stage of

demonstrating that [the plaintiffs] were subject to a common policy or practice and were

'similarly situated' to one another and to potential opt-in plaintiffs").

## V.   DISCUSSION

### A.   Conditional Certification and Scope of the Collective

Unlike the common conditional certification motion which often relies primarily on the

operative pleadings and minimal evidentiary support, Plaintiffs' motion is supported by a

substantial evidentiary showing.  It is no surprise then that Defendant concedes the Plaintiffs

have likely met their burden for conditional certification as a collective action as to at least some

AvalonBay employees in some states.  *See* Def.'s Opp'n. at 13.  The Court agrees, for the

following reasons.

The applicable FLSA regulation which purportedly authorizes AvalonBay's Non-

Productive Hour policy states as follows:

> The parties may agree to compensate nonproductive hours worked
> at a rate (at least the minimum) which is lower than the rate

> applicable to productive work. In such a case, the regular rate is the
> weighted average of the two rates, as discussed in § 778.115 and the
> employee whose maximum hours standard is 40 hours is owed
> compensation at his regular rate for all of the first 40 hours and at a
> rate not less than one and one-half times this rate for all hours in
> excess of 40. (See § 778.415 for the alternative method of computing
> overtime pay on the applicable rate.) In the absence of any
> agreement setting a different rate for nonproductive hours, the
> employee would be owed compensation at the regular hourly rate
> set for productive work for all hours up to 40 and at a rate at least
> one and one-half times that rate for hours in excess of 40.

29 C.F.R. § 778.318(b).  Plaintiffs have alleged that Defendant's policy and practice of assigning

different pay rates for productive and nonproductive hours is a unilateral employment decision

that is not reflected in any agreements between Defendant and its employees.  Am. Compl. ¶ 11.

They have provided evidence to support this contention – testimony from employees that (1) the

Non-Productive Hours policy was not made known to them upon their hiring and (2) they only

discovered the policy after examining their pay stubs.  *See, e.g.*, Brown Decl. ¶¶ 17-18; Magette

Decl. ¶¶ 15-16; Anderson Decl. ¶ 19; Donohue Decl. ¶ 17; Santander Decl. ¶ 20.  Taking such

assertions as true for purposes of the instant motion, Plaintiffs' pleadings and supporting

evidence show that at least some members of the putative collective are "similarly situated" to

Plaintiffs in that that they were all subjected to AvalonBay's uniform Non-Productive Hour

policy, which, in the absence of informed notice and agreement on behalf of employees, was

unlawful.  Similarly, and as Plaintiffs point out, both the evidence submitted with Plaintiffs'

motion and the allegations in their pleadings demonstrate that even if employees had notice of

and agreed to the Non-Productive Hours policy, AvalonBay misapplied that policy with respect

to at least some employees.  *See* Pls.' Reply at 4.  Based on these two showings – (1) the absence

of any agreement to the Non-Productive Hours policy on behalf of employees and (2) the

misapplication of the policy – the Court finds that with respect to at least some AvalonBay

employees, Plaintiffs have satisfied their minimal burden at the first stage of the collective action certification analysis.  The operative (and more difficult) question, then, concerns the proper scope of the collective.

The Court first addresses the geographic scope of the collective.  As outlined, Plaintiffs seek conditional certification of a nationwide collective, arguing that the evidence submitted indicates application of the same unlawful policy at AvalonBay properties in New York, New Jersey, Connecticut, Massachusetts, Virginia, and Maryland.  They contend this showing is sufficient to support certification of a nationwide collective.  *See* Pls.' Mem. at 15-17; Pls.' Reply at 5.  Defendant, on the other hand, contends that certification of a nationwide collective is inappropriate because the alleged unlawful conduct is the application of the facially valid Non-Productive Hours policy, and Plaintiffs have "fail[ed] to identify by name a single individual from a state other than New York, Maryland, Massachusetts, or Virginia who they claim was subjected to improper classification of time."  Def.'s Opp'n. at 11, 16.

After examining the factual showing put forward by Plaintiffs, as well as the arguments of the parties, the Court is not persuaded that there is currently sufficient evidence to conditionally certify a nationwide collective.  The Court acknowledges – and Defendant concedes – that Plaintiffs' evidence shows there is a plausible basis to believe that certain employees at AvalonBay locations in New York, Maryland, Massachusetts, and Virginia were subjected to Defendant's common, unlawful Non-Productive Hours policy.  The Court also finds – over Defendant's opposition – that Plaintiffs have made a sufficient factual showing to plausibly support that this policy also extended to employees at AvalonBay locations in New Jersey and Connecticut.  With respect to New Jersey, Plaintiff Magette testifies that she has "had discussions about AvalonBay's Non-Productive Hours policy with Ms. Mothersill who worked

as a Leasing Consultant at AvalonBay's properties in New York, New Jersey, and Connecticut.  I am aware that Ms. Mothersill was subject to AvalonBay's NonProductive [*sic*] Hours policy while working at AvalonBay's New York, New Jersey and Connecticut properties."  Magette Decl. ¶ 14.  Plaintiff Magette and Mothersill were both Leasing Consultants at Avalon Fort Greene, and the Court finds that Magette's testimony about what she learned with respect to her co-worker's experience with the Non-Productive Hours policy is sufficient to expand the collective to AvalonBay employees working at locations in New Jersey.  With respect to Connecticut, Diego Santander states that he and other maintenance and service employees from New York, New Jersey, and Connecticut, including Tanski, Gary Oldham, Willie Genoa, Juan Manivesa, Diana Laplante, Mario Rodane, and Dominick Cotrone were regularly present at staff meetings, training sessions, and other work-related events conducted during work hours, which were classified as "non-productive."  Santander Decl. ¶ 16.  Santander learned that these other employees also were not paid overtime for "non-productive" hours.  *Id*. ¶ 18.  The Court finds these statements sufficient to expand the collective to AvalonBay employees working at locations in Connecticut.

Although Plaintiffs have satisfied their burden with respect to a collective covering New York, New Jersey, Maryland, Massachusetts, Connecticut, and Virginia, the Court finds that there is insufficient evidence to expand the scope of the collective to cover employees at properties in other states at this time.  The lack of reference to any individually identifiable employees beyond these six states, even indirectly, is indicative of Plaintiffs' deficient showing in terms of certifying a nationwide collective, notwithstanding their argument that "[t]he declarations of Plaintiffs and multiple non-party employees demonstrating how Defendant's NHP policy was uniformly applied in 5 of 13 jurisdictions clearly satisfies the 'simple showing'"

required.  Pls.' Reply at 8.  *See Tanski v. Avalonbay Communities, Inc.*, No. CV 15-6260, 2017 WL 10858910, at *14 (E.D.N.Y. Mar. 31, 2017) ("Plaintiffs have failed to identify by name a single non-exempt maintenance and service employee at any of Defendant's locations outside of New York."); *see Anjum v. J.C. Penney Co.*, No. 13 CV 460, 2015 WL 3603973, at *8 (E.D.N.Y. June 5, 2015) (limiting the scope of a collective to employees of two stores where the court "ha[d] before it no firsthand evidence of violations at any of the J.C. Penney retail stores in the State of New York" other than two locations); *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 459 (E.D.N.Y. 2014) ("Plaintiffs' submissions do not include sufficient evidence of a nationwide common policy or plan to deny SAs pay for overtime. As the Second Circuit has made clear, the requisite modest factual showing 'cannot be satisfied simply by unsupported assertions.'") (quoting *Myers v. Hertz Corp.,* 624 F.3d 537, 555 (2d Cir. 2010)).  *Cf. Lanqing Lin v. Everyday Beauty Amore Inc.*, No. 18-CV-729, 2018 WL 6492741, at *3 (E.D.N.Y. Dec. 10, 2018) ("Although there is caselaw to suggest that when plaintiffs do not state any facts as to the existence of a common policy or practice of underpayment at other store locations a collective action should not include those stores, those cases involved situations where store locations existed nationwide . . . . Conditional collective certification is often granted, however, where . . . there is a much narrower class of putative plaintiffs, a wider sample of evidentiary support, or both.") (internal quotations and citations omitted); *see also Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 355 (E.D.N.Y. 2008).  Plaintiffs will have the opportunity to address this issue again if and when they file a motion for class certification.

The Court next address which employees should comprise the collective.  Plaintiffs seek conditional certification of a collective of the following non-exempt AvalonBay employees: Leasing Consultants (Community Consultants); Concierges; and Maintenance Employees, not

including New York maintenance employees (including Maintenance Supervisors, Maintenance Technician I – III, Groundskeeper, Housekeeper, Maintenance Assistant, Porter, Pool Maintenance Technician, RS Maintenance Associate, and Community Coordinator).  *See* Pls.' Reply at 9.  Defendant does not appear to oppose a collective comprised of these titles, stating only that any ambiguity as to which titles are being included in the collective should be resolved before any collective is conditionally certified.  *See* Def.'s Opp'n. at 20-21.  Both sides observe that the eleven employee titles within the "Maintenance Employee" category were agreed to by the parties in the *Tanski* action.  *See id.* at 20 n.16; Pls.' Replay at 9 n.6.  The Court finds that condition certification of a collective comprised of the employee titles which Plaintiffs seek here is appropriate given the apparent lack of disagreement between the parties and the evidentiary showing Plaintiffs have made.

### B.    Opt-In Notice Period

The FLSA has a two-year statute of limitations, except in the case of willful violations for which the statute of limitations is three years.  *See* 29 U.S.C. § 255(a).  NYLL claims are subject to a six-year statute of limitations.  *See* N.Y. LAB. LAW § 198(3).  Plaintiffs seek a six-year notice period for individuals who are located at AvalonBay properties located in New York, and a three-year notice period for individuals who are located outside of New York.  *See* Pls.' Reply at 12.  Defendant contends that "[t]o the extent a[n] FLSA collective action is certified to include multi-state jurisdictions with different statutes of limitations, the Notice period should be limited to only the FLSA's three year limitations period."  Def.'s Opp'n. at 21 n.17.

"Courts in this Circuit are split on the appropriateness of adopting the NYLL's [six-year] limitations period for the purpose of sending FLSA notice to a group of opt-in plaintiffs." *Bhumithanarn*, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) (quoting *Gaspar v. Personal*

*Touch Moving, Inc.,* No. 13–CV–8187, 2014 WL 4593944, at *7 (S.D.N.Y. Sept. 15, 2014)). This case is different from other FLSA actions where the number of potential opt-in plaintiffs is small and readily ascertainable.  In such cases, a six-year limitations period may be appropriate. *See, e.g.*, *Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 132 (E.D.N.Y. 2011) (approving a six-year limitations period where "the number of Plaintiffs and potential plaintiffs as represented does not appear to be very high"); *Cano*, No. 08-CV-3005, 2009 WL 5710143, at *10 (E.D.N.Y. Feb. 3, 2009) ("Since there may be a number of employees who have both timely state and FLSA claims . . . and the number of potential plaintiffs is purportedly not very high, it seems logical, efficient, and manageable to compel defendants' production of these names only once, if possible.").

In light of the scope of the collective here, which will potentially cover employees with thirteen professional titles who are located in six different states, the Court determines that the clarity of the notice and effectuation of its purpose – *i.e.*, notifying individuals of their rights under the FLSA – would be better served with a single, three-year notice period.  *Ansoralli v. CVS Pharmacy, Inc.*, No. 16-CV-1506, 2017 WL 8676437, at *1 (E.D.N.Y. July 25, 2017) (citing *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013) ("It would be confusing to employees who are ineligible for the FLSA opt-in class to receive the opt-in notice, which does not relate to any state law claims."); *Gaspar*, 2014 WL 4593944, at *7 (noting the potential confusion created if employees who would only be part of the opt-out class action receive notice of an opt-in lawsuit to which they may not, in fact, opt in)).  *Cf. Fernandez v. Sharp Mgmt. Corp.*, No. 16-CV-0551, 2016 WL 5940918, at *5 (S.D.N.Y. Oct. 13, 2016) (finding that "given the potential difficulties with plaintiffs' NYLL claims, a three-year notice

period is appropriate").  The FLSA's three-year limitations period and a corresponding three-year notice period shall therefore apply to all potential opt-in plaintiffs.

With respect to the calculation of the limitations period, courts often begin counting back from the date of the conditional certification order since the statute of limitations on FLSA claims continues to run until a plaintiff consents to join the action.  *See* 29 U.S.C. § 256; *Ritz v. Mike Rory Corp.*, No. 12 Civ. 367, 2013 WL 1799974, at *3 (E.D.N.Y. 2013).  "However, 'because equitable tolling issues often arise as to individual opt-in plaintiffs, courts frequently permit notice to be keyed to the [ ] period prior to the filing of the complaint, with the understanding that challenges to the timeliness of individual plaintiffs' actions will be entertained at a later date.'"  *Gaspar*, 2014 WL 4593944, at *7 (quoting *Trinidad*, 962 F. Supp. 2d at 564 n.14); *see, e.g.*, *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 410 (S.D.N.Y. 2012); *Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340, 356 (E.D.N.Y. 2012)*; Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451 (S.D.N.Y. 2011).  The Court adopts the latter course of action here and will permit notice to be keyed to the three-year period prior to November 27, 2017, the date the Complaint was filed.  *See* DE 1.

Based on the foregoing discussion, the Court grants Plaintiffs' motion for conditional certification as a collective action.  The collective shall be defined as follows:

> All non-exempt Leasing Consultants / Community Consultants, Concierges, and Maintenance Employees (including Maintenance Supervisors, Maintenance Technician I – III, Groundskeeper, Housekeeper, Maintenance Assistant, Porter, Pool Maintenance Technician, RS Maintenance Associate, and Community Coordinator), excluding New York maintenance employees, employed by AvalonBay Communities Inc. at properties located in New York, New Jersey, Massachusetts, Virginia, Connecticut, and Maryland, between November 27, 2014, and the present.

C. **Dissemination of Notice**

Plaintiffs initially sought dissemination of the notice through text messages and email, in addition to regular mail and posting at AvalonBay facilities. *See* Pls.' Mem. at 18-19. The parties now appear to be in agreement that the notice should not be emailed or text-messaged. Accordingly, the notices shall be posted in AvalonBay facilities "where employees congregate, such as staff lounges, break rooms, or clock-in stations," and disseminated through first-class mail.

D. **Reminder Postcard**

Defendant opposes Plaintiffs' request to distribute a "reminder postcard" to potential opt-in plaintiffs. *See* Def.'s Opp'n. at 22-23. The weight of caselaw in the Second Circuit has in recent years moved towards approval of reminder notices in light of the remedial purpose of the FLSA. *See Diaz v. New York Paving Inc.*, 340 F. Supp. 3d 372, 387 (S.D.N.Y. 2018) (explaining that although defendant "cites [*Guzelgurgenli v. Prime Time Specials Inc.*, 883 F. Supp. 2d 340 (E.D.N.Y. 2012)] in support of its argument, that court was addressing the issue in 2012 when 'the Court [was] . . . unable to find[ ] any caselaw in the Second Circuit directly addressing a reminder notice.' *Guzelgurgenli*, 883 F. Supp. 2d at 357. Since then, courts in this district have permitted sending a reminder notice in similar cases of [conditional] certification"); *see also Chhab v. Darden Restaurants, Inc.*, No. 11 Civ. 8345, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) ("Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate.") (collecting cases); *Morris v. Lettire Const., Corp. .,* 896 F. Supp. 2d 265, 275 (S.D.N.Y. 2012) (same). Accordingly, the Court finds that circulation of a reminder postcard is

appropriate in this case,[6] and approves the reminder language as revised in Plaintiffs' motion papers.  *See* Pls.' Reply at 10.  The reminder notice may be mailed to potential opt-in plaintiffs twenty-one (21) days before the opt-in deadline.

    E.    **Other Disagreements as to the Language of the Notice**

    To the extent there remain disagreements as to the content and language of the proposed notice, the Court directs counsel for the parties to meet and confer in good faith, and, within twenty-one (21) days of entry of this Order, submit either a revised joint proposed notice, or a joint filing outlining the points of disagreement.

    F.    **Production of Identifying Information**

    Plaintiffs have withdrawn their initial request for potential opt-in plaintiffs' social security numbers.  *See* Pls.' Reply at 13.  Defendant states that it does not object to providing a computer-readable list of the names, addresses, telephone numbers, email addresses, titles, dates of employment compensation rates, and hours worked per week for the AvalonBay properties covered by any certification Order.  Def.'s Opp'n. at 24.  Courts within the Second Circuit typically grant this type of request when granting a motion for conditional certification of an FLSA collective action.  *See Sexton*, 2009 WL 1706535, at *13; *Bifulco*, 262 F.R.D. at 216.  The Court finds that providing this information is appropriate within the context of this case. Accordingly, Defendant shall provide Plaintiffs with this information for all potential opt-in plaintiffs within twenty-one (21) days of entry of this Order.  Defendants shall not provide social security number or dates of birth.  The time frame for which this information must be produced

---

    [6]   The Court recognizes that it did not approve circulation of a reminder notice in the related *Tanski* action.  *See Tanski*, 2017 WL 10858910, at *21.

commences November 27, 2014 – the date marking the beginning of the relevant three-year notice period which the Court has established.

### G.    Equitable Tolling

Plaintiffs seek equitable tolling of the FLSA statute of limitations.  *See* Pls.' Mem. at 24. Defendant opposes this request.  *See* Def.'s Opp'n. at 25.  Pursuant to 29 U.S.C. Section 256(b), the statute of limitations applicable to a plaintiff's claim continues to run until he or she has filed a written consent with the court to join the lawsuit.  However, "[a] district court may toll the limitations period to avoid inequitable circumstances." *Jackson v. Bloomberg, L.P*., 298 F.R.D. 152, 170 (S.D.N.Y. 2014) (citing *Chapman v. ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002)). "When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has 'acted with reasonable diligence during the time period she seeks to have tolled,' and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. New York City Transit Authority*, 333 F. 3d 74, 80-81 (2d Cir. 2003) (quoting *Chapman*, 288 F. 3d at 512).  Courts in the Second Circuit "have permitted equitable tolling while the motion for conditional certification is before the court." *Fa Ting Wang*, 2015 WL 4603117, at \*14 (citing *Robles*, 2013 WL 6684954, at \*13); *McGlone*, 867 F. Supp. 2d at 445 (finding that potential plaintiffs "whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings").

In light of the length of time that has passed since the instant motion was filed, and the relative diligence of Plaintiffs' counsel in pursuing conditional certification (the instant motion was filed approximately four months after the Amended Complaint), the Court is granting equitable tolling from the date the motion was filed.  *See Chime v. Peak Sec. Plus, Inc*., 137 F.

Supp. 3d 183, 188 (E.D.N.Y. 2015) ("Given Plaintiff's overall steadfast due diligence during the pendency of these motions, the balance of equities requires granting equitable tolling from September 9, 2013, the date Plaintiff filed the Motion to Certify."); *Jackson*, 298 F.R.D. at 171 (pointing out that equitable tolling was appropriate because the motion for Rule 216(b) certification was pending for a substantial time, and there was a risk that "a sizeable number of potential plaintiffs will have become time-barred"); *cf. Valerio v. RNC Indus., LLC*, 314 F.R.D. 61, 74 (E.D.N.Y. 2016) (finding that the remedial purposes of the FLSA are best served by applying the statute of limitations from the date of the filing of the complaint).

## VI.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion for conditional certification as an FLSA collective action pursuant to Section 216(b) is GRANTED in accordance with the rulings set forth in this Memorandum and Order.

The Court is setting this case down for a telephone conference to discuss the timing of the dissemination of the notice and the opt-in period.  The conference call will be held on April 24, 2019 at 1:30 p.m.  Plaintiffs' counsel is requested to initiate the call to Chambers (631-712-5760) with opposing counsel on the line.


**SO ORDERED.**


Dated: Central Islip, New York
       March 29, 2019


                                        /s/ A. Kathleen Tomlinson
                                        A. KATHLEEN TOMLINSON
                                        U.S. Magistrate Judge