**HACH ROSE SCHIRRIPA**
**& CHEVERIE LLP**
112 Madison Avenue, 10th Floor
New York, New York 10016
Telephone: (212) 213-8311

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAMARIEA MAGETTE and DIANA RUFUS, on behalf of themselves and others similarly situated, | Civil Action No.: 2:17-cv-06897 (AKT) |
| Plaintiffs, | |
| vs. | |
| AVALONBAY COMMUNITIES, INC., | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
## MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
## CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS,
## APPOINTMENT OF PLAINTIFFS' COUNSEL AS CLASS COUNSEL, AND
## <u>APPROVAL OF PLAINTIFFS' PROPOSED NOTICE OF SETTLEMENT</u>

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

I.      FACTUAL AND PROCEDURAL BACKGROUND......................................................... 2

        A.      The AvalonBay Overtime Litigation. ...................................................... 2
        B.      Investigation and Discovery .................................................................. 3
        C.      Settlement Negotiations ........................................................................ 6

II.     SUMMARY OF THE SETTLEMENT TERMS. ............................................................. 6

        A.      The Settlement Amount ........................................................................ 6
        B.      Releases................................................................................................. 7
        C.      Allocation Formula ............................................................................... 6
        D.      Attorneys' Fees, Litigation Costs, and Service Awards ........................ 9
        E.      Settlement Claims Administrator......................................................... 9

III.    CLASS ACTION SETTLEMENT PROCEDURE. ....................................................... 10

IV.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE. .............. 11

        A.      The Settlement is Fair, Reasonable and Adequate............................... 12

V.      CONDITIONAL CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS IS
        APPROPRIATE........................................................................................................ 17

        A.      Numerosity......................................................................................... 18
        B.      Commonality...................................................................................... 19
        C.      Typicality ........................................................................................... 20
        D.      Adequacy of the Named Plaintiffs ..................................................... 21
        E.      Certification is Propser Under Rule 23(b)(3)...................................... 21

VI.     PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL. ......... 23

VII.    THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE.......... 24

VIII.   PLAINTIFFS WILL SEEK APPROVAL OF THE FLSA SETTLEMENT.................... 25

CONCLUSION..................................................................................................................... 25

## <u>INTRODUCTION</u>

Subject to Court approval, Named Plaintiffs Kamariea Magette and Diana Rufus and the members of the class ("Class Members"; "the Class"; or "Plaintiffs") and Defendant AvalonBay Communities, Inc. ("AvalonBay" or "Defendant") (together with Plaintiffs, "Parties") have settled this wage and hour class and collective action for $990,000. The proposed settlement satisfies all the criteria for preliminary approval. Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Joint Stipulation of Settlement and Release ("Settlement Agreement")[1]; (2) certify the proposed class for settlement purposes; (3) appoint Hach Rose Schirripa & Cheverie, LLP ("HRS&C" or "Plaintiffs' Counsel") as Class Counsel; and (4) approve the proposed Notice of Class Action Settlement, *see* Declaration of Frank R. Schirripa ("FRS Dec.") Exhibit A. Defendant does not oppose this motion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   <u>The AvalonBay Overtime Litigation</u>

Named Plaintiffs Kamariea Magette and Diana Rufus and the members of the class are current and former AvalonBay employees (hereinafter "Maintenance and Office Employees") who held one or more of the following non-exempt positions at any of AvalonBay's properties on or after November 27, 2014 in the States of Massachusetts, Connecticut, New Jersey, Maryland and Virginia:

> Non-exempt Leasing Consultant/Community Consultant; Senior Community Consultant; Affordable Housing Specialist; Affordable Housing Supervisor; Senior Specialist, Affordable Housing; Front Desk Supervisor; Sales and Service Supervisor/Customer Service Supervisor; Community Supervisor; Concierge; Maintenance Supervisor; Maintenance Technician 1; Maintenance Technician 2; Maintenance Technician 3; Groundskeeper; Housekeeper; Maintenance Assistant; Porter; Pool Maintenance Technician; RS Maintenance Associate; Community Coordinator; Intern; Summer Associate; Contingent Assoc RS Office; Contingent Assoc RS Concierge; Coordinator Resident Service Seasonal Community

---

[1] A true and correct copy of the Settlement Agreement has been submitted directly to the Court.

Consultant; RS Maintenance Intern; Contingent Assoc RS Maint; PT Community Concierge; PT Community Consultant; Supervisor Sales and Service – Non-Leasing; Supervisor Sales and Service – Leasing; Floating Community Consultant; Door Attendant; Pool Attendant; and Coordinator Affordable Housing.[2]

The Class also includes AvalonBay employees who held one or more of the following non-exempt positions at any of AvalonBay's New York State properties (hereinafter "Office Employees") on or after November 27, 2011:

Non-exempt Leasing Consultant/Community Consultant; Senior Community Consultant; Affordable Housing Specialist; Affordable Housing Supervisor; Senior Specialist, Affordable Housing; Front Desk Supervisor; Sales and Service Supervisor/Customer Service Supervisor; Community Supervisor; Concierge; Intern; Summer Associate; Contingent Assoc RS Office; Contingent Assoc RS Concierge; Coordinator Resident Service; Seasonal Community Consultant; Supervisor Sales and Service – Non-Leasing; Supervisor Sales and Service – Leasing; PT Community Concierge; and Floating Community Consultant.[3]

This case arises from AvalonBay's use of a "Non-Productive Hours" ("NPH") timekeeping policy, whereby Plaintiffs allege that the Company categorized certain time spent by non-exempt hourly employees at mandatory, work-related meetings as non-productive time. Pursuant to Defendant's policy, non-productive hours are ineligible for overtime, even when an employee works more than 40 hours in a workweek. Plaintiffs allege that AvalonBay used this NPH policy to substantially reduce its overtime burden – wages that Plaintiffs were lawfully entitled to.

On November 27, 2017, Named Plaintiffs,[4] Kamariea Magette and Diana Rufus, filed a class and collective action complaint on behalf of themselves and all current and former hourly workers employed at AvalonBay's properties throughout the United States, claiming unpaid overtime wages stemming from Defendant's unlawful NPH policy in violation of the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA") and the New York Labor Law ("NYLL"). On

---

[2] Settlement Agreement § 1(v).

[3] Settlement Agreement §1(w).

[4] Former Named Plaintiff Erika Brown's claims were dismissed pursuant to the Court's February 10, 2021 Stipulation and Order of Dismissal With Prejudice and to Amend Caption. *See* Dkt. No. 61.

February 5, 2018, Plaintiffs filed an Amended Complaint to include violations of the wage and hour laws of each state where AvalonBay operated properties, as well as unjust enrichment claims. FRS Dec. ¶16.

On March 29, 2019, the Court granted Plaintiffs' motion pursuant to FLSA § 216(b) for conditional certification of a collective of non-exempt Maintenance and Office Employees working at any AvalonBay property in New Jersey, Massachusetts, Virginia, Connecticut, and Maryland, and non-exempt Office Employees working at any AvalonBay property in New York, since November 27, 2014. On June 14, 2019 and August 19, 2019, Court-approved Notice was disseminated to 2,042 putative collective members. 184 individuals returned executed consent forms by the close of the opt-in deadline (the "Opt-In Plaintiffs"). FRS Dec. ¶17.

## B. <u>Investigation and Discovery</u>

Prior to the commencement of this lawsuit the parties litigated a related action captioned *Tanski v. AvalonBay Communities, Inc.,* Civil Action No. 15-cv-6260 (the "*Tanski* Action"). AvalonBay's NPH time code designation was also the central issue in the *Tanski* Action. The class and collective in the *Tanski* Action, however, only concerned individuals working in maintenance and service positions at AvalonBay's New York properties. The investigation into AvalonBay's compensation policies and practices in the *Tanski* Action revealed that the alleged harm caused by the Company's NPH policy affected all non-exempt employees at all AvalonBay properties nationwide. Therefore, the instant action was filed to protect the interests of all non-exempt employees. FRS Dec. ¶18.

Following the close of the opt-in period, the parties conducted a round of informal discovery for the purposes of reaching an early resolution of the case. To facilitate these efforts, the Court granted a stay of all discovery deadlines for 90 days. *See* Dkt. No 41. During informal

3

discovery, AvalonBay produced voluminous spreadsheets containing wage and hour data for all nonexempt employees at AvalonBay properties located in New York, New Jersey, Massachusetts, Virginia, Connecticut, and Maryland during the relevant periods. Plaintiffs' counsel devoted significant amount of hours reviewing and analyzing the wage and hour data in preparation for the parties' first two mediation sessions, which ultimately did not result in a resolution of the action. *See* Sec. I(C), *infra* and FRS Dec. ¶19.

On May 15, 2020, the Parties appeared before the Court to set the scope and timeline for formal discovery following the Parties' unsuccessful mediation. The Court's Civil Conference Minute Order (Dkt. No. 46) set a schedule for, among other items, written discovery directed to AvalonBay, Named Plaintiffs, and a sampling of 36 Opt-in Plaintiffs. FRS Dec. ¶20

In September 2020, AvalonBay began producing voluminous records relevant to the Company's NPH policies and practices during the class periods. Approximately half of the 202,590 total pages of documents produced by AvalonBay were internal emails and corresponding records that were pulled from the email files of custodians using search terms such as "NPH", or "NPT", or "NWP".[5] Emails from the Company's executives and upper-level managers contained discussions regarding how, when, and why NPH should apply at AvalonBay's properties nationwide. In addition to the emails, Defendant's production included personnel files, policy documents, organizational charts, and voluminous time and compensation data for the estimated 2,000 individuals in the class and collective. FRS Dec. ¶21.

In addition to the significant undertaking by Plaintiffs' counsel to catalogue, review and analyze over 200,000 pages of documents, Plaintiffs were also diligent in responding to Defendant's document requests and interrogatories for the Named Plaintiffs and 36 Opt-in

---

[5] These abbreviations refer to "Non-Productive Hours," "Non-Productive Time," and "No Work Performed," respectively.

4

Plaintiffs. FRS Dec. ¶22.

On October 28, 2020, the Parties appeared for a Discovery Status Conference before the Court to report. The Court's October 28, 2020 Minute Order reflected that the Parties anticipated conducting approximately 45 depositions, including depositions of a sample of 4-5 Opt-in Plaintiffs from each of the affected states. *See* Dkt. No. 58. Following the Conference, the depositions of Named Plaintiffs Kamariea Magette and Diana Rufus and 12 opt-in plaintiffs were held. FRS Dec. ¶23.

With respect to the Plaintiffs' damages, the voluminous payroll data produced by AvalonBay for the putative and collective classes provided a clearer understanding of the damages sustained on a class-wide basis. FRS Dec. ¶24. Specifically, reviewing the pay-period data for each Class Member helped identify (1) the number of pay-periods that Defendants allegedly failed to pay a Class Member overtime by way of the NPH policy; and (2) the amount of damage allegedly suffered by each worker, which increased the longer the Class Member was employed with AvalonBay. *Id.*

In addition to the substantial discovery conducted, the Parties also engaged in extensive motion practice that included Plaintiffs' FLSA § 216(b) motion (Dkt. Nos. 17-21); Defendant's motion to extend time to serve further written discovery and extend fact deposition deadline (Dkt. Nos. 62-63, 65); Plaintiffs' Motion to Compel Defendant to Produce a Witness in response to Plaintiffs' *Fed. R. Civ. P.* 30(b)(6) Notice of Deposition (Dkt. Nos. 68-69); Defendant's motion seeking a protective order on certain subjects noticed within Plaintiffs' *Fed R. Civ. P.* 30(b)(6) Notice of Deposition (Dkt. Nos. 70-72); and the April 23, 2021 submissions outlining the Parties' positions on whether individuals working in newly-identified job titles subject to the NPH policy should receive supplemental notice of this action (Dkt Nos. 80-81). FRS Dec. ¶25.

### C. **Settlement Negotiations**

The parties engaged Stephen Sonnenberg of JAMS to conduct three private mediations. *Id.* ¶26. Plaintiffs submitted three detailed mediation statements that explained the claims, noted Defendant's vulnerabilities, acknowledged risk, and explained their damage calculations. *Id.* ¶27. The first two mediations, conducted on January 14, 2020 and May 12, 2020, were unsuccessful, resulting in nearly another year of intense litigation. *Id.* ¶28

On May 10, 2021, the Parties participated in a third all-day mediation with Mr. Sonnenberg whereby the parties were able to reach an agreement on all terms, which they subsequently memorialized in the Settlement Agreement. *Id.* ¶29.

## II. SUMMARY OF THE SETTLEMENT TERMS

### A. **The Settlement Amount**

Settlement Agreement reflects a Goss Settlement Amount of $990,000.00, Settlement Agreement §1(s) (hereinafter referred to as "Agreement"), which covers Class Members' awards, the cost of settlement administration, any Court-approved service payments, and any Court-approved attorneys' fees and expenses. FRS Dec. ¶30; Agreement §1(s). The Class members are grouped into State Settlement Classes of:

a. New York Settlement Class that includes the Settlement Class Representatives Kamariea Magette and Diana Rufus and all non-exempt Office Employees employed by AvalonBay at any of its properties in New York State at any time from November 27, 2011 through the date the Court grants the Motion for Preliminary Approval of Settlement.

b. Massachusetts Settlement Class that includes the Settlement Class Representative Michael DeCarlo and all non-exempt Maintenance and Office Employees employed by AvalonBay at any of its properties in the State of Massachusetts at any time from November 27, 2014 through the date the Court grants the Motion for Preliminary Approval of Settlement.

c. New Jersey Settlement Class that includes the Settlement Class Representative Joseph Codispoti and all non-exempt Maintenance and Office Employees employed by AvalonBay at any of its properties in the State of New Jersey at any time from November 27, 2014 through the date the Court grants the Motion for Preliminary Approval of Settlement.

d. Connecticut Settlement Class that includes the Settlement Class Representative Jeremy Jordan and all non-exempt Maintenance and Office Employees employed by AvalonBay at any of its properties in the State of Connecticut at any time from November 27, 2014 through the date the Court grants the Motion for Preliminary Approval of Settlement.

e. Maryland Settlement Class that includes the Settlement Class Representative Stephen Yetter and all non-exempt Maintenance and Office Employees employed by AvalonBay at any of its properties in the State of Maryland at any time from November 27, 2014 through the date the Court grants the Motion for Preliminary Approval of Settlement.

f. Virginia Settlement Class that includes the Settlement Class Representative Brian Henning and all non-exempt Maintenance and Office Employees employed by AvalonBay at any of its properties in the State of Virginia from November 27, 2014 through the date the Court grants the Motion for Preliminary Approval of Settlement.

Agreement § 4(a).

The "FLSA Settlement Class" consists the Settlement Class Representatives and all individuals who, as of the date of this Agreement, have filed consents to join this Action, who worked at one or more AvalonBay properties in the State of New York as non-exempt Office Employees, or who worked at one or more AvalonBay properties in the States of Massachusetts, Connecticut, New Jersey, Maryland, and Virginia as non-exempt Maintenance and Office Employees from November 27, 2014 through the date the Court grants the Motion for Preliminary Approval of the settlement in this case (the "FLSA Class Period"), and who have not been previously dismissed from the Action. FRS Dec. ¶30-31; Agreement §4(b).

## B. Releases

The Settlement Agreement provides that all Rule 23 Class members who do not timely opt out of the settlement will release their state wage and hour law claims. FRS Dec. ¶32; Agreement §11(a). Individuals who timely opt-in to the FLSA settlement class will release their FLSA claims against AvalonBay. FRS Dec. ¶33; Agreement §11(b).

## C. Allocation Formula

7

The allocation to Settlement Class Members will be made from the Net Settlement Amount. Each Settlement Class Member who submits a timely and valid Claim Form ("Participating Settlement Class Member") will receive an amount calculated pursuant to the following formula (his or her "Distribution Amount"):

1. Each Participating Class Member who worked in the <u>State of New York</u> shall be assigned:

   a. one (1) point for each week worked in New York between November 27, 2011 and December 31, 2017; and

   b. one (1) point for each additional calendar year during which he or she was employed with AvalonBay starting from January 1, 2018 through the date the Court grants the Motion for Preliminary Approval of settlement. (This point is earned so long as the Participating Class Member was employed with AvalonBay at any point during the applicable time period (*i.e.* calendar years 2018, 2019, 2020 and 2021) regardless of whether the individual was employed for the entire calendar year or only a portion of that year).[6]

2. Each Participating Class Member who worked in <u>any State other than New York</u> shall be assigned:

   a. one (1) point for each week worked in any State other than New York between November 27, 2014 and December 31, 2017; and

   b. one (1) point for each additional calendar year during which he or she was employed with AvalonBay starting from January 1, 2018 through the date the Court grants the Motion for Preliminary Approval of settlement. (This point is earned so long as the Participating Class Member was employed with AvalonBay at any point during the applicable time period (*i.e.* calendar years 2018, 2019, 2020 and 2021) regardless of whether the individual was employed for the entire calendar year or only a portion of that year).

3. To calculate each Participating Class Member's Distribution Amount:

---

[6] The reason only a single point is assigned for each calendar year beginning on January 1, 2018 is due to a change in AvalonBay's NPH policy, whereby the Company phased out the disputed "NPH" time code designation for a new set of time codes that were not being challenged by Plaintiffs. Plaintiffs' counsel's review of class member data confirmed that the "NPH" time code at issue in this case was used only sparingly, if at all, by AvalonBay starting in 2018. Given that Plaintiffs' claims for unpaid overtime wages stemmed directly from the Company's use of the original "NPH" time code, January 1, 2018 also serves as the appropriate cut-off for Plaintiffs' damages. Since the disputed "NPH" code was only used a small number of times after 2017, Plaintiffs agree that only one (1) point should be assigned for each year of employment thereafter. *See* FRS Dec. ¶35.  Defendant does not object to this approach.

    a.  Add all points for Participating Class Members together to obtain the "Total Denominator;"

    b.  Divide the number of points for each Class Member by the Total Denominator to obtain each Participating Class Member's "Portion of the Net Settlement Fund."

4.  Multiply each Participating Class Member's Portion of the Net Settlement Fund by the Net Settlement Fund to determine each Class Member's Distribution Amount.

FRS Dec. ¶34; Agreement §5(g). Defendant will deposit the Gross Settlement Amount into the Qualified Settlement Fund ("QSF") as follows:

> Within 14 days of the Effective Date,[7] AvalonBay shall deposit the Gross Settlement Amount into an interest-bearing account mutually agreed upon by Class Counsel and Defense Counsel and to be under the control of the Claims Administrator. Agreement §5(b). Any funds remaining in the settlement account more than 120 days following the distribution shall be distributed to a nonsectarian non-profit charitable organization selected by Settlement Class Representatives in consultation with AvalonBay and approved by the Court, or as otherwise directed by the Court. Agreement §5(i).

### D. Attorneys' Fees, Litigation Costs, and Service Awards

Plaintiffs' Counsel will apply for up to a thirty-three and one third percent (33 1/3%) of the Gross Settlement Amount of $990,000 plus Lawsuit Costs (the "Fee Award"). Agreement §6(a). Pursuant to Fed. R. Civ. P. §23(h) and 54(d)(2), Plaintiffs' Counsel shall move for attorneys' fees and costs along with their Motion for Final Approval of the Settlement. Plaintiffs will also apply for an incentive award of $5,000 to the Named Plaintiffs, Kamariea Magette and Diana Rufus, in recognition of the services they rendered on behalf of the class.[8] Agreement §7(a).

### E. Settlement Claims Administrator

The parties have jointly retained Angeion Group, LLC as the claims administrator. FRS Dec. ¶36; Agreement §8. The Claims Administrator's fees will be paid out of the Fee Award. *Id.*

---

[7] The "Effective Date" means the date on which the Final Approval Order becomes final. Agreement §1(o).

[8] This is a typical incentive award in the Second Circuit. *See e.g. Sewell v. Bovis Lend Lease, Inc.,* No. 09 Civ. 6548, 2012 WL 1320124 at *14 (S.D.N.Y. April 16, 2012) (granting service awards of $15,000 and $10,000 to class representatives in wage and hour class action settlement).

## III. CLASS ACTION SETTLEMENT PROCEDURE

The well-defined class action settlement procedure includes three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2. Dissemination of notice of settlement to all class members; and

3. A final settlement approval hearing at which class members may be heard, and at which argument concerning the fairness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002). Plaintiffs request that the Court take the first step now – granting preliminary approval of the Settlement Agreement, conditionally certifying the settlement class, approving Plaintiffs' Proposed Notices, and authorizing Plaintiffs to send notices to all members of the settlement class. A notice of settlement (the "Settlement Notice") will be sent to all Class Members within the State Settlement Classes defined above in Section II(A). Agreement §10(b).

The Parties respectfully submit the following proposed schedule for final resolution of this matter for the Court's consideration and approval:

1. (a) Within 21 days after the Court grants Plaintiffs' Motion for Preliminary Approval of the Settlement, AvalonBay shall provide to the Claims Administrator information for each Class Member necessary to effectuate Settlement Notice. Notice will be mailed within fourteen (14) days after AvalonBay provides the list in this Section to the Claims Administrator. Agreement §10(a).

2. Settlement Class Members seeking to object to the Settlement must timely file and serve such objection no later than thirty (30) days after the initial Notice is mailed to the Settlement Class Member. *Id.* §10(k)(1).

3. Settlement Class Members who wish to opt out of the Settlement must submit to the Claims Administrator a request to opt out that includes their name and the AvalonBay property or properties in in which they worked, postmarked no later than the end of the Claim Period. *Id.* §10(l).

4. A final fairness hearing will be held as soon as is convenient for the Court. Prior to the

final fairness hearing, Plaintiffs will file a Motion for Final Approval of the Settlement on a date directed by the Court.

5. If the Court enters the Final Approval Order, the Effective Date shall occur on the later of: (A) three (3) days after the expiration of the time for filing an appeal from the Court's approval of the Agreement, if no Notice of Appeal has been filed; or (B) if an appeal is filed, three (3) days after the expiration of the final resolution of all appeals (including requests for rehearing or petitions for *certiorari*) resulting in final judicial approval of the Settlement Agreement. *Id.* §3(d).

6. Within twenty (20) days after the Effective Date, the Claims Administrator shall disburse the Distribution Amounts to the Participating Settlement Class Members. *Id.* §5(h)(i).

## IV. PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits. *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citation omitted); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Clark v. Ecolab, Inc.,* Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (*citing Newberg* § 11.25). To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Exec. Ass'n,* 627 F.2d 631, 634 (2d Cir. 1980). If, after a preliminary evaluation of the proposed settlement, the court finds that it "appears to fall within the range of possible approval," the court should order that the class members receive notice of the settlement. *Clark*, 2009 WL 6615729, at *3.

The approval of a proposed class action settlement is a matter of discretion. *Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1079 (2d Cir. 1995). "[C]ourts should give proper

deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ." *Clark*, 2009 WL 6615729, at *3. Preliminary approval requires only an "initial evaluation" of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. *Clark*, 2009 WL 6615729, at *3 (citing *Newberg* § 11.25). "If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . ." the court should permit notice to be sent to class members. *Manual for Complex Litigation* (Third) § 30.41).[9]

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Spagnuoli v. Louie's Seafood Restaurant, LLC*, 13-CV-4907, 2018 WL 7413304, at *3 (E.D.N.Y Sept. 27, 2018) (quoting *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005)). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Id.* at 3. Preliminary approval is the first step in the settlement process. It simply allows notice to issue and for Class Members to object or opt out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of Class Members' input.

### A. The Settlement is Fair, Reasonable, and Adequate

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), abrogated on other grounds by *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("*Grinnell*"). Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls within the range

---

[9] Courts often grant preliminary settlement approval without requiring a hearing or a court appearance. *See, e.g., Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472, 2012 WL 5862749, at *4 (S.D.N.Y. Nov, 15, 2012) (preliminary approval granted based on memorandum of law, declaration, and exhibits); *Palacio v. E*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *1 (S.D.N.Y. Mar. 12, 2012) (same).

of possible final approval, or "the range of reasonableness," *id.* at § 11.26, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement. The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. All of the *Grinnell* factors weigh in favor of approval of the Settlement Agreement, and certainly in favor of preliminary approval.

1.   Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)

By reaching a settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and ensure recovery for the class. "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *In re Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank,* 236 F.3d 78 (2d Cir. 2001). This case is no exception, with more than 2,000 Class Members and multiple claims.

Further litigation here would cause additional expense and delay. Additional discovery, including discovery regarding the 168 opt-in plaintiffs, would be required to establish liability and prove damages. In addition, the parties likely would file cross-motions for summary judgment on Defendant's defenses. If the Court denied the motions, a fact-intensive trial would be necessary to determine the legality of AvalonBay's Non-Productive Hours policy and whether any unpaid overtime is owed to its employees as a result of Defendant's policy or the misapplication thereof.

A trial would be lengthy and consume tremendous time and resources. A judgment would likely be appealed. The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of approval.

## 2.   The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)

Notice of the settlement and its details has not yet been issued to the class. The Court should more fully analyze this factor after notice is issued, and Class Members are given the opportunity to opt out or object. At this early stage in the process, Kamariea Magette and Diana Rufus, the Named Plaintiffs, expressed approval of the settlement and were pleased that the current and former AvalonBay employees who were subject to the Non-Productive Hours Policy would be receiving compensation. FRS Dec. ¶29.

## 3.   Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

Although preparing this case through trial would require hundreds of hours of discovery for both sides, the parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.,* 391 F.3d 516, 537 (3d Cir. 2004). "[T]he pretrial negotiations and discovery must be sufficiently adversarial that they are not designed to justify a settlement . . . [, but] an aggressive effort to ferret out facts helpful to the prosecution of the suit." *In re Austrian & German Bank Holocaust Litig.,* 80 F.Supp.2d 164, 176 (S.D.N.Y. 2000). The Parties' discovery here meets this standard. Defendant produced over 200,000 documents during discovery including the time and payroll data for the class members and opt-ins which Plaintiffs reviewed. Additionally, Defendants have conducted depositions the two Plaintiffs and twelve opt-in Plaintiffs. *See* Section (I)(B), *supra*; FRS Dec. ¶¶18-24. This factor favors preliminary approval. *See Dorn v. Eddington Sec., Inc.,* No. 08 Civ. 10271, 2011 WL 382200, at

*3 (S.D.N.Y. Jan. 21, 2011) (finding, in a case at similar stage of discovery, that "Plaintiff's Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the class members' claims.").

    4.   Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

Although Plaintiffs believe their case is strong, it is subject to considerable risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.,* 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.,* No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007). A trial on the merits would involve significant risks for Plaintiffs as to both liability and damages. Plaintiffs would have to overcome AvalonBay's defenses that their NPH policy was facially valid and not in violation of the FLSA and the state wage and hour laws at issue. Plaintiffs would also need to overcome individualized damages issues, given Defendant's likely position that the decision to designate a worker's time as NPH was made by that worker's manager, rather than some automatic designation by payroll. While Plaintiffs believe that they could ultimately establish both liability and damages, this would require significant factual development. Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration. The proposed settlement alleviates these uncertainties. This factor therefore weighs in favor of approval.

    5.   Maintaining the Class Through Trial Would Not Be Simple (*Grinnell* Factor 6)

The risk of obtaining certification and maintaining it through trial is also present. The Court has not certified the Rule 23 Class, and the Parties anticipate that such a determination would be

reached only after further discovery and exhaustive briefing. In opposing class certification, Defendant would likely argue that individualized questions preclude class certification. Settlement eliminates the risk, expense, and delay that permeates such processes.

In addition, after the close of discovery, Defendant would likely challenge the Court's determination that Plaintiffs may proceed on their FLSA claims on behalf of a collective pursuant to 29 U.S.C. § 216(b). Settlement eliminates the risk and delay inherent in this process. As such, this factor weighs in favor of approval.

6. Defendant's Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7)

While it is not clear whether Defendant could withstand a greater judgment, their ability to do so, "standing alone, does not suggest that the settlement is unfair." *Frank*, 228 F.R.D. at 186 (*quoting In re Austrian,* 80 F. Supp. 2d at 178 n.9). Thus, this factor is neutral and does not preclude the Court from granting preliminary approval.

7. The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)

Defendant has agreed to pay a substantial amount, up to $990,000. This represents considerable value, given the attendant risks of litigation. Whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (*quoting In re Austrian,* 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (*quoting Newman v. Stein,* 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.,*

16

495 F.2d at 455 n.2. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n,* 688 F.2d 615, 628 (9th Cir. 1982); *Cagan v. Anchor Sav. Bank FSB,* No. 88 Civ. 3024, 1990 WL 73423, at *12-13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement where "best possible recovery would be approximately $121 million").

Here, the settlement provides much more than "a fraction of the potential recovery." Each Class Member will receive a payment based on the number of non-exempt workweeks he or she worked during the applicable statutory periods. Weighing the benefits of the settlement against the evidence and the risks associated with continuing to litigate, the settlement amount is reasonable.

The *Grinnell* factors weigh in favor of issuing preliminary approval of the settlement. In the event that a substantial number of objectors come forward with meritorious objections, the Court can reevaluate its determination. Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (*quoting Joel A. v. Giuliani,* 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

## V. CONDITIONAL CERTIFICATION OF THE RULE 23 SETTLEMENT CLASS IS APPROPRIATE

Plaintiffs respectfully request that the Court conditionally certify the six State Classes and the "FLSA Settlement Class" listed within Section II(A) under Federal Rule of Civil Procedure 23(e) for purposes of effectuating the settlement. As discussed below, the settlement Rule 23 class meets all the requirements for class certification for settlement purposes. *See Newberg* § 11.27 ("When the court has not yet entered a formal order determining that the action may be maintained as a class action, the parties may stipulate that it be maintained as a class action for the purpose of settlement only."); *County of Suffolk v. Long Island Lighting Co.,* 710 F. Supp. 1422, 1424 (E.D.N.Y. 1989) ("It is appropriate for the parties to a class action suit to negotiate a proposed

settlement of the action prior to certification of the class."), *aff'd in part, rev'd in part on other grounds,* 907 F.2d 1295 (2d Cir. 1990).

Provisional settlement class certification and appointment of class counsel have practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all Class Members of the proposed Settlement Agreement, and setting the date and time of the final approval hearing. *See, e.g., In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 790-92 (3d Cir. 1995); *Dorn,* 2011 WL 382200, at *1-2 (provisionally certifying wage and hour settlement class at preliminary approval stage).

A class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the court to find that "questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* at (b)(3). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.,* 237 F.R.D. 26, 31 (E.D.N.Y. 2006) (*quoting Marisol A. v. Giuliani,* 126 F.3d 372, 377 (2d Cir. 1997)).

### A.  **Numerosity**

"[N]umerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde*

*Park*, 47 F.3d 473, 483 (2d Cir. 1995). Plaintiffs easily satisfy this requirement because there are approximately 2,500 Class Members. FRS Dec. ¶38.

### B. **Commonality**

The proposed settlement class also satisfies the commonality requirement, the purpose of which is to test "whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 158 n.13 (1982). Although the claims need not be identical, they must share common questions of fact or law. *Port Auth. Police Benevolent Ass'n v. Port Auth. of N.Y. & N.J.*, 698 F.2d 150, 153-54 (2d Cir. 1983). The proper question is whether there is a "unifying thread" among the claims to warrant class certification. *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986). Courts construe the commonality requirement liberally. *Frank*, 228 F.R.D. at 181 (citation omitted).

This case involves numerous common issues. Plaintiffs' and Class Members' claims all arise from the same NPH policy of Defendant. Plaintiffs and Class Members all bring the identical claim that Defendant, through its NPH policy, unilaterally classified certain hours worked as "non-productive" time in order to avoid its legal duty to pay its non-exempt Maintenance and Office Employees overtime for all hours worked in excess of forty (40) hours per work week in violation of the FLSA and state wage and hour laws.

Indeed, courts have consistently held that claims by workers that their employers have unlawfully denied them overtime wages to which they were legally entitled meet the commonality prerequisite for class certification. *See D'Arpa v. Runway Towing Corp.,* No. 12-CV-1120, 2013 U.S. Dist. LEXIS 85697, at *72 (E.D.N.Y. June 18, 2013) (commonality satisfied where named plaintiffs' and putative class members' claims arise from common wrong: defendants' failure to

pay overtime pursuant to NYLL); *Morris v. Affinity Health Plan, Inc.,* 859 F. Supp. 2d 611, 615-616 (S.D.N.Y. 2012) (commonality satisfied where plaintiffs claimed that defendant had policy of not paying all class members overtime pay); *Clark v. Ecolab Inc.,* Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2010 WL 1948198, at *3 (S.D.N.Y. May 11, 2010) (common issues included "whether [defendant] failed to pay [p]laintiffs and the . . . [c]lass [m]embers overtime premium pay for all hours they worked over 40 in a workweek. . . ).

### C. **Typicality**

Rule 23 requires that the claims of the representative party be typical of the claims of the class. "Like the commonality requirement, typicality does not require the representative party's claims to be identical to those of all class members." *Frank*, 228 F.R.D. at 182. Typicality is satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376. "[M]inor variations in the fact patterns underlying individual claims" do not defeat typicality when the defendants direct "the same unlawful conduct" at plaintiff and the class. *Robidoux v. Celani,* 987 F.2d 931, 936 (2d Cir. 1993). Courts evaluate typicality "with reference to the company's actions, not with respect to particularized defenses it might have against certain class members." *Trinidad v. Breakaway Courier Sys., Inc.,* No. 05 Civ. 4116, 2007 WL 103073, at *6 (S.D.N.Y. Jan. 12, 2007) (*quoting Wagner v. NutraSweet Co.,* 95 F.3d 527, 534 (7th Cir. 1996)).

Again, Plaintiffs' claims arise from the same factual and legal circumstances that form the basis of the Rule 23 Class Members' claims – namely, Defendant's NPH policy. Plaintiffs also claim the same injuries as do Class Members – that Defendant failed to properly pay them for overtime hours worked. Accordingly, Plaintiffs satisfy the typicality requirement. *See D'Arpa,* 2013 LEXIS 85697, at *72; *Hernandez,* 2012 WL 5862749, at *3 (typicality satisfied where

"[p]laintiffs' claims for overtime pay [arose] from the same factual and legal circumstances that form[ed] the bases of the [c]lass [m]embers' claims"); *Morris*, 859 F. Supp. 2d at 616 (same).

### D.  Adequacy of the Named Plaintiffs

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "The adequacy requirement exists to ensure that the named representative will 'have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'" *Toure v. Cent. Parking Sys.,* No. 05 Civ. 5237, 2007 WL 2872455, at *7 (S.D.N.Y. Sept. 28, 2007) (*quoting Penney v. Deutsche Bank AG,* 443 F.3d 253, 268 (2d Cir. 2006)). Plaintiffs meet the adequacy requirement where Ms. Magette or Ms. Rufus' interests are not antagonistic to  those of the Class Members. *See Morris,* 859 F. Supp. 2d at 616 (no evidence that plaintiffs' and class members' interests were at odds). Plaintiffs' Counsel also meets the adequacy requirement of Rule 23(a)(4). FRS Dec. ¶¶ 3-14.

### E.  Certification is Proper Under Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact "predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). This inquiry examines "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997).

#### 1.  Common Questions Predominate

To establish predominance, Plaintiffs must demonstrate that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole . . . predominate over those issues that are subject only to individualized proof." *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91, 108 (2d Cir. 2007). The essential inquiry is whether

"liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Marriott v. Cnty. of Montgomery,* 227 F.R.D. 159, 173 (N.D.N.Y. 2005) (*quoting In re Visa Check/MasterMoney Antitrust Litig,* 280 F.3d 124, 139 (2d Cir. 2001)). Simply because a defense may arise and affect different class members differently does not defeat predominance. *See Noble v. 93 Univ. Place Corp.,* 224 F.R.D. 330, 339 (S.D.N.Y. 2004) (*quoting In re Visa Check/MasterMoney,* 280 F.3d at 138). Where plaintiffs are "unified by a common legal theory" and by common facts, predominance is satisfied. *McBean v. City of New York,* 228 F.R.D. 487, 502 (S.D.N.Y. 2005). The predominance requirement is "designed to determine whether 'proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Frank*, 228 F.R.D. at 183 (*quoting Amchem*, 521 U.S. at 623).

Here, Class Members' common factual allegations and legal theory – that Defendant violated federal and state laws by designating certain time worked as "non-productive" hours in order to avoid paying them overtime wages – predominate over any variations among Class Members. *See Hernandez,* 2012 WL 5862749, at *4 (common factual allegations and legal theory predominated over variations in wage and hour misclassification case); *Torres v. Gristede's Corp.,* No. 04 Civ. 3316, 2006 WL 2819730, at *16 (S.D.N.Y. Sept. 29, 2006) (plaintiffs "introduced sufficient proof that Defendants engaged in a common practice to deny employees overtime pay," and "this issue predominates over any individual calculations of overtime wages"); *D'Arpa,* 2013 LEXIS 85697, at *76 (Rule 23(b) satisfied where defendant admitted to implementing the compensation policy being challenged by plaintiffs).

### 2.   A Class Action is a Superior Mechanism

The second part of the Rule 23(b)(3) analysis compares whether "the class action device [is] superior to other methods available for a fair and efficient adjudication of the controversy."

*Green v. Wolf Corp.,* 406 F.2d 291, 301 (2d Cir. 1968); *Amchem*, 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.") (internal citation omitted). Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action. Fed. R. Civ. P. 23(b)(3).[10] Concentrating the litigation in this Court is desirable because much of the allegedly wrongful conduct occurred within its jurisdiction. The class device will achieve economies of scale, conserve judicial resources, preserve public confidence in the integrity of the judicial system by avoiding the waste and delay of repetitive proceedings, and prevent inconsistent adjudications of similar claims. *See Morris,* 859 F. Supp. 2d at 617.  A class action is the best mechanism to fairly and efficiently resolve Class Members' claims.

## II.   PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Plaintiffs' Counsel should be appointed as Class Counsel under Rule 23(g), which governs the standards and framework for appointing class counsel. Rule 23(g) sets forth four criteria: (1) "the work counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;" (3) "counsel's knowledge of the applicable law; and (4) "the resources that counsel will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A).

Plaintiffs' Counsel meets all of these criteria. Plaintiffs' Counsel has done substantial work identifying, investigating, prosecuting, and settling Plaintiff's and Class Members' claims. FRS Dec. ¶¶16-29. Plaintiffs' Counsel has substantial experience prosecuting and settling complex

---

[10] Whether the case would be manageable as a class action at trial is of no consequence in the context of a proposed settlement. *See Amchem,* 521 U.S. at 620. Moreover, denying class certification on manageability grounds is "disfavored." *In re Visa Check/MasterMoney,* 280 F.3d at 140.

class actions, including wage and hour employment class actions, and the lawyers assigned to this matter are well-versed in class action and wage and hour law and are well-qualified to represent the class. *Id.* ¶¶3-14. Accordingly, courts have repeatedly found Plaintiffs' Counsel to be adequate class counsel in class actions. *See* note 8, *supra.*

## VI. THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE

The Proposed Notice, which is attached to the FRS Dec. as Exhibit A, complies with due process and Federal Rule of Civil Procedure 23. Notice must provide:

> the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:
>
> (i)   the nature of the action;
> (ii)  the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv)  that a class member may enter an appearance through an attorney if the member so desires;
> (v)   that the court will exclude from the class any member who requests exclusion;
> (vi)  the time and manner for requesting exclusion; and
> (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Proposed Notice satisfies each of these requirements. The Notice also describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing. Courts have approved class notices even when they provided only general information about a settlement. *See In re Michael Milken & Assocs. Sec. Litig.,* 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice need only describe terms of settlement generally). The detailed information in the Proposed Notice far exceed this bare minimum threshold. *See* Agreement §§ 5(h), 10(a)-(h).

Within 21 days after the Court grants Plaintiffs' Motion for Preliminary Approval of Settlement, AvalonBay shall provide to the Claims Administrator the necessary list of names,

contact information and beginning and end dates for each Settlement Class Member during the Applicable Class Period. Agreement §10(a). The Claims Administrator shall run a United States Post Office National Change of Address (NCOA) database update on the names/addresses contained within the Class List in a commercially reasonable time prior to issuing the Notice. *Id.* The Claims Administrator will mail Class Members their payments within twenty (20) days after the Effective Date. Agreement §5(h).

## VII.    PLAINTIFFS WILL SEEK APPROVAL OF THE FLSA SETTLEMENT

Plaintiffs will seek approval of the settlement of the FLSA claims with their final approval motion. The standard for approval of an FLSA settlement is "considerably less stringent" than for a Rule 23 settlement, because an FLSA settlement does not implicate the same due process concerns. *See McMahon v. Olivier Cheng Catering & Events, LLC,* No. 08 Civ. 8713, 2010 WL 2399328, at *6 (S.D.N.Y. Mar. 3, 2010) (standard for approval of FLSA settlement is lower than for Rule 23 settlement because FLSA settlement does not implicate same due process concerns as Rule 23 settlement."); *Pefanis v. Westway Diner, Inc.*, No. 08-CV-002 (DLC), 2010 U.S. Dist. LEXIS 93180, at *10 (S.D.N.Y. Sept. 7, 2010) (all that is required for approval of FLSA settlement is showing that original and opt-in plaintiffs were common victims of FLSA violation pursuant to systematically-applied company policy or practice). When Plaintiffs file their motion for final approval of the settlement, they will seek approval of the FLSA settlement.

<u>**CONCLUSION**</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Settlement and enter the Proposed Order certifying the proposed class for settlement purposes, appointing Plaintiffs' counsel as Class Counsel, and approving the proposed Notice of Class Action Settlement.

Dated:  New York, New York
        July 9, 2021

                                    Respectfully submitted,

                        By:     /s/ Frank Schirripa
                                Frank R. Schirripa
                                Daniel B. Rehns
                                John A. Blyth
                                **HACH ROSE SCHIRRIPA**
                                **& CHEVERIE, LLP**
                                112 Madison Avenue, 10th Floor
                                New York, New York 10016
                                Tel.: (212) 213-8311

                                *Counsel for Plaintiffs and the*
                                *Collective and Class*